GEORGE W. HEY, Respondent, *v.* MATTHEW J. DOLPHIN and THE INTERNATIONAL POSTAL SUPPLY COMPANY of New York, Appellants.

*Contract — joint agreement between stockholders not to pledge or sell stock for a certain period, not void as against public policy — power of attorney to vote upon stock so held, when irrevocable.*

As a rule those who have the largest interest in a corporation may control its affairs, since they have the greatest interest that its business shall be well managed.

In an action brought to have a contract in relation to a transfer of stock in a corporation and a power of attorney declared void as against public policy, it appeared that George W. Hey, Matthew J. Dolphin and three others, who were interested in the development of machines for canceling stamps and post-marking letters, had obtained patents for this purpose, which were transferred to the International Postal Supply Company, a corporation organized for the purpose of manufacturing and dealing in machines for stamp canceling and post-marking mail matter, and also for the purpose of acquiring and dealing in letters patent for such machines. One-half of the capital stock of the

corporation, amounting to 10,000 shares, was issued to the five owners as a payment for the patents, they contributing 2,000 shares, which were placed on the market and sold to provide funds for the corporation.

Subsequently Hey and Dolphin entered into a written agreement for the purpose of consolidating their interests, by which it was agreed that the parties should jointly own all inventions and improvements in post office machines theretofore or thereafter made or purchased by either party, and that they should contribute equally to the expense of the business and share equally the profits; that all sales of stock of the International Postal Supply Company should be for their joint benefit, and that neither should have the right to dispose of any invention or patent without the consent of the other.

It appeared that on February 27, 1888, in pursuance of this agreement, three contracts were entered into between Hey and Dolphin, as parties of the first part, and the International Postal Supply Company, as party of the second part, which provided, among other things, for the assignment of their inventions to the International Postal Supply Company, in consideration of the issue of certain shares of capital stock to Dolphin and Hey jointly, each to own one-half, and to be entitled to one-half the dividends declared thereon, the certificates of such stock not to be surrendered or others issued in their stead for the period of ten years, without the joint consent of Dolphin and Hey, nor were the shares to be disposed of or pledged during the same period without the joint consent of Hey and Dolphin. The instruments appointed Matthew J. Dolphin as proxy to vote on said shares, the power of attorney to remain unrevoked and irrevocable for ten years, unless its revocation was sooner assented to by both Dolphin and Hey.

*Held,* that the agreement upon the part of Dolphin and Hey that the stock should be held for ten years, during which time the power of attorney was to remain irrevocable, was not void as against public policy;

That the effect of the arrangement was not materially different from an agreement to become partners as to the stock for a period of ten years;

That the power of attorney was not revocable at the pleasure of Hey, since it had been given for a consideration and was coupled with an interest;

That section 21 of chapter 687 of the Laws of 1892, relative to proxies, which was passed after the contracts in question were made, did not apply.

*Semble,* that if the statute were to be given a retroactive effect, it would not apply to the case of a proxy on stock so situated that neither owner could vote thereon without the consent of the other.

APPEAL by the defendants, Matthew J. Dolphin and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Onondaga on the 10th day of July, 1895, upon the decision of the court rendered after a trial at the Onondaga Special Term, declaring void, certain provisions of three contracts entered into between plaintiff and the defendants on the 27th day of February, 1888, and directing the

division between the plaintiff and the defendant Dolphin of certain shares of stock in the defendant corporation.

The action was in equity, and the relief demanded is

*First.* That a certain power of attorney, contained in three contracts entered into between the plaintiff and the defendant Dolphin, as parties of the first part, and the defendant corporation as party of the second part (under which power of attorney the defendant Dolphin was constituted the proxy for the plaintiff in regard to 10,000 shares of stock of the defendant corporation issued in the joint names of the plaintiff and the defendant Dolphin) be declared void and of no force and effect, and that it be canceled and extinguished.

*Second.* That the defendant corporation be adjudged and decreed to issue to the plaintiff a certificate or certificates of 5,000 shares of stock, being his proportion of the 10,000 shares of stock issued to him and the defendant Dolphin jointly.

*Third.* That the defendant Dolphin be enjoined from voting upon or otherwise interfering with the said 5,000 shares of stock of the plaintiff.

*Samuel Untermyer, Louis Marshall, DeWitt C. Brown* and *William S. Andrews,* for the appellants

*John W. Suggett* and *Ceylon H. Lewis,* for the respondent.

MERWIN, J.:

The defendant, The International Postal Supply Company of New York, was duly incorporated under the laws of this State on the 10th of July, 1885. It was formed for the purpose of manufacturing and dealing in machines and other supplies for use and employment in the post offices in this and other countries, including machines and devices for stamp-canceling and post-marking mail matter, and also for the purpose of acquiring and dealing in letters patent for such machines. Its capital stock was $2,000,000, divided into shares of $100 each. The number of its trustees was seven, and they were duly elected. The plaintiff and the defendant Dolphin have been trustees since the organization, Dolphin being the president of the board. The place of business of the corporation is Brooklyn.

Prior to the organization of the corporation Hey and Dolphin with three others were owners, or interested in the development of inventions for machines for stamp-canceling and post-marking letters, and had obtained or applied for two patents covering such inventions. These patents or applications were on the organization of the corporation transferred to it, and 10,000 shares of stock were issued thereupon to the five parties. Of this stock the parties contributed 2,000 shares which were placed on the market for the benefit of the corporation, and sold to provide funds for developing the inventions. On the 14th of October, 1887, Hey and Dolphin entered into a written agreement, in and by which, after reciting that the parties had been engaged in the business of inventing and developing machines for stamping and canceling mail matter and were the joint owners of pending applications for patents and other joint interests connected with the business, and that it was deemed for the best interests of both parties, for the purpose of preventing friction and disputes, to consolidate their interest in the business into a joint interest as far as it could be effectually done consistently with the rights and obligations of the parties in and to the International Postal Supply Company, it was, therefore, agreed that the parties should own jointly all inventions and improvements in the post office machines of every name and nature theretofore or thereafter made or purchased by either party. A schedule of twelve applications was attached, supposed to include all then made. It was also agreed that the parties "shall contribute in equal shares to the expenses of the said business and of developing and patenting the said inventions, and shall share equally the profits thereof;" that all sales of stock of the Postal Company made by either should be for the joint benefit of both, and that neither of the parties should have the right to dispose of any invention, application or patent or of any interest therein without the consent of the other.

On the 27th of February, 1888, the three contracts in question were made between the plaintiff and the defendant Dolphin as parties of the first part, and the corporation defendant as the party of the second part, by which, taken as a whole, the plaintiff and Dolphin sold and transferred to the company the twelve applications and inventions contained in the schedule annexed to the contract

between Hey and Dolphin, and agreed to assign all inventions or improvements which they, or either of them, might make in post office machines of any description.

One of the contracts specifically covered one of the named applications, and the price to be paid by the company was $400,000 in the capital stock of the company at par value, and it was provided that the stock should be issued in a single certificate of 4,000 shares " to Matthew J. Dolphin and George W. Hey jointly, and the beneficiary interest in the said four thousand shares of stock is hereby apportioned, ascertained and declared to be as follows, viz.: The said Matthew J. Dolphin shall own an undivided one-half interest in the said stock, and the said George W. Hey shall own the other undivided one-half interest therein. The said certificate of four thousand shares shall not be surrendered and another or others issued in its stead for the purpose of dividing the said stock among the said joint owners thereof, or among them and other or others for the period of ten years from the date of this instrument, without the joint consent of said Dolphin and Hey, which said joint consent shall be reduced to writing and filed with the said company. The said four thousand shares of stock shall not be sold, pledged or otherwise disposed of in whole or in part during the said period of ten years without the joint consent of the said Dolphin and Hey being so filed with the said company as aforesaid; but it is expressly agreed that the said party of the second part shall interpose no objection or hindrance, but, on the contrary thereto, shall consent, and does hereby consent, to any disposition of the said stock, or any portion thereof, which shall be made by and with the joint consent of the said Dolphin and Hey. The said invention, and others for similar uses, assigned by the said parties of the first part to the said party of the second part in other instruments of assignment, bearing even date herewith, have cost the said parties of the first part great expenditures of time and money, and they have, therefore, made it a condition of this agreement and assignment, as well as of the others above referred to, that without the joint consent the stock paid to the said parties of the first part shall not, during the time named, be sold in whole or in part, and shall not be divided among themselves or others, but shall remain as first issued for the purpose of enabling the said

parties of the first part to prevent the control and management of the said company from passing over to persons who might be less qualified, or less disposed, to make the business of the said company a success and its stock valuable. All dividends paid, and all payments for any cause, or from any source, which may be made by the said company upon the said four thousand shares of stock shall be divided among and paid to the said Dolphin and Hey, share and share alike, according to their respective interests in the said stock. * * * The said parties of the first part do hereby jointly and severally constitute and appoint the said Matthew J. Dolphin to be their lawful attorney, substitute and proxy for them, and in their names and stead to vote on the said four thousand shares of stock at all annual elections of trustees and inspectors of election for the said company, and at all meetings of the stockholders of the said company, as fully and with the same force and effect as either of them might or could do if the said stock stood in his individual name on the books of the said company, and he were personally present at such elections or such meetings. This power of attorney shall remain unrevoked and irrevocable for the said period of ten years from the date of this instrument, unless its revocation shall sooner be assented to jointly by the said Matthew J. Dolphin and George W. Hey. In the event of the death of the said Matthew J. Dolphin within the said ten years, the said four thousand shares of stock shall be divided according to their respective interests therein between the said George W. Hey and the heirs or legal representatives of the said Matthew J. Dolphin, and the power of attorney herein executed shall be revoked, unless all parties in interest shall jointly agree to a different disposition of the said stock and its management."

Another of the contracts covered another application and invention at the same price, with similar provisions as to the form of the certificate and its disposal and the power of attorney.

The third contract covered the other ten inventions or applications at the price of $200,000 in stock, with similar provisions as to the form of certificate and its disposal and the power of attorney.

The certificates were issued in the form designated, and thereby Hey and Dolphin became joint owners of one-half the stock of the corporation. It appears that at that time they, to some extent,

each individually, owned other shares of the stock, not affected by the agreements.

In the complaint it is alleged, among other things, that Dolphin has, since the said contracts were made, controlled the corporation and its business, and has mismanaged the same in divers-named particulars to the great injury of plaintiff and the other stockholders; that the power of attorney is void under the laws of the State and is contrary to public policy and has been revoked by plaintiff. Relief is asked that it be declared void, and that the corporation issue to plaintiff a certificate of 5,000 shares.

It was found by the Special Term that Dolphin, by virtue of the power of attorney and by exercising the voting powers thereby conferred, has been and still is enabled to control and manage the affairs of the company, but that the plaintiff had not proved any fraudulent mismanagement on the part of Dolphin. At the trial it was held that the evidence on this subject on the part of the plaintiff did not, of itself, call for a revocation of the agreement, or call for a reply on the part of the defendants, and the defendants gave no evidence on the subject. It was, however, held as matter of law that the provisions in the contracts making the power of attorney or proxies irrevocable for ten years, unless their revocation was sooner assented to by Dolphin and Hey, were contrary to public policy, and that plaintiff had a right to revoke the same; that those parts of the contracts that provided that the certificates should remain as they were, and that the stock should not be sold or divided during the period of ten years without the joint consent of Dolphin and Hey, were contrary to public policy and void, and that plaintiff was entitled to judgment accordingly, and for a partition and division by the corporation of the 10,000 shares equally between Hey and Dolphin.

No question is made about the validity of the issue by the defendant corporation of the 10,000 shares of stock, or as to the right of Hey and Dolphin to buy them, or about the right or power of the corporation to make the contracts. The real contest is between Hey and Dolphin about the character of the ownership of the stock and about its management. The other stockholders are not here complaining, nor is the corporation.

The plaintiff seeks the benefit of the contracts so far as they give

him an ownership of an undivided one-half of the stock, but repudiates some of the conditions of the ownership that are connected with the acquisition and are a part of the same transaction. It is not entirely clear that the plaintiff can repudiate conditions which seem to be somewhat material and still claim full ownership.

But passing that, we come to the question whether the agreement that the stock should be held for ten years and the power of attorney be for that time irrevocable, was void as against public policy. The object and purpose of the arrangement as stated in the contracts is not of itself vicious, but rather the contrary. This is not a case where, as in some of the cases cited by the respondent, there is a combination of stockholders for the special benefit of some party, or where the power to cast the vote is in a party having no beneficial interest. The arrangement purported to be for the benefit of all the stockholders and the attorney was one of the parties beneficially interested. Nor is it a case of combination of stockholders within the decision of *Fisher* v. *Bush* (35 Hun, 641), upon which the respondent relies, for, in that case, it is said by Judge BARKER, page 643 : " The owner of property may withdraw it from the market as long as he deems it for his interest to do so ; and if these parties and their associates were the promoters of this corporation, or owned these shares in common, or as co-partners, then, doubtless, they could have entered into a valid agreement regulating a sale of the same and requiring the owners to hold them from market for a reasonable and definite period of time, and thus forbidding a sale by either of his interest to one against whom his associates might have a reasonable objection. (*Moffatt* v. *Farquhar*, 7 Ch. Div. 591, in 23 Moak's Eng. Rep. 731.) A stipulation of that character would not be illegal as against public policy, as it would be simply a provision, assented to by all, that the new comer into the business transaction should be with the approval of the other joint owners."

It will hardly be claimed that a majority of stockholders may not combine to control an election of directors. (*Havemeyer* v. *Havemeyer*, 43 N. Y. Super. Ct. 506 ; *Barnes* v. *Brown*, 80 N. Y. 537.) In the latter case it is said : " It is the general rule, sanctioned by the policy of the law, that those who have the largest interest in corporations may control them, as they have the greatest interest that they shall be well managed." In *Brown* v. *Pacific Mail S. S.*

*Co.* (5 Blatchf. 525) it was held that an irrevocable power of attorney or proxy, given by an owner of stock in a corporation, to vote upon such stock, and to continue for the period of four years, reserving certain privileges to such owner in regard to the manner of dealing in the stock and withdrawing from such ownership, is not contrary to public policy or open to objection.

It is to be borne in mind that the plaintiff and Dolphin, under the agreement of October 14, 1887, were joint owners of the inventions transferred to the corporation and were partners in the business of developing and patenting those and similar inventions. Evidently this relation existed when the contracts in question were made, and they related to a part of that business. The relation between Hey and Dolphin was not terminated, but changed; the common property assumed another form, and its management for a definite period, for reasons satisfactory to themselves, and not as between themselves illegal, was intrusted to one of the parties. This was the effect of the power of attorney. The consideration for this was ample, as it was a part of the transaction of the sale of the inventions and the purchase of the stock. It may be assumed that neither of the parties would have assented to the sale and purchase except on those conditions. The right to a partition may be waived. (17 Am. & Eng. Ency. of Law, 693, and cases cited.) As partners or as tenants in common, Hey and Dolphin had the right to deal with the *corpus* of the stock as a unit, and it is difficult to see why it would be any more against public policy for them to withdraw it from the market for a definite period than it would be for an individual to do so under the same circumstances, or that any illegal restraint of trade would be accomplished. (*Hodge* v. *Sloan*, 107 N. Y. 244.) The nature of the ownership was such that one could not sell without the consent of the other. (1 Cook on Stock, etc., § 429.)

We are of the opinion that the court erred in holding that the provisions complained of were void as against public policy. Nor should it be said that the power of attorney was revocable at the pleasure of the plaintiff. It was a power given for a consideration, and Dolphin had an interest in the property itself. The stock being issued to the two together, the power of attorney or proxy was necessary in order to carry out the arrangement. (*Matter of Pioneer Paper Co.*, 36 How. Pr. 111; 1 Thomp. on

Corp. 731.) In Story on Agency (§ 477) it is said that where an authority or power is coupled with an interest, or where it is given for a valuable consideration, it is from its own nature and character in contemplation of law irrevocable, unless there is an express stipulation to the contrary.

The plaintiff further claims that the power of attorney or proxy is revocable under the provisions of section 21 of the General Corporation Law (Chap. 687 of 1892), which, so far as it is important here, is as follows: " Every proxy must be executed in writing by the member himself, or by his duly authorized attorney. No proxy hereafter made shall be valid after the expiration of eleven months from the date of its execution, unless the member executing it shall have specified therein the length of time it is to continue in force, which shall be for some limited period. Every proxy shall be revocable at the pleasure of the person executing it, but a corporation having no capital stock may prescribe in its by-laws the persons who may act as proxies for members, and the length of time for which proxies may be executed."

This act was passed after the contracts in question were made, but it is claimed to be effective here under the power reserved in the Legislature to amend or modify a law relating to a corporation. It is not clear that this act, in this regard, was intended to be retroactive. (*N. Y. & Oswego Midland R. R. Co.* v. *Van Horn*, 57 N. Y. 473, 477.) Besides, the power of attorney or proxy here considered is not of the ordinary character. Had plaintiff not given it he could not have voted on the stock without the consent of Dolphin. Neither could vote on it without the consent of the other. (*Matter of Pioneer Paper Co., supra.*) The statute referred to is not, we think, applicable here.

It seems to us that the court erred in holding, as matter of law, that the provisions of the contracts for not disposing of the stock for the period of ten years without the consent of both parties were illegal, and that the power of attorney was void or revocable. The contracts as between the plaintiff and Dolphin were quite analogous to a partnership arrangement for a definite period, and we see no good reason for allowing one party to terminate it at his pleasure. If the plaintiff can show a good reason for a termination of the relation it is to be assumed that he will get relief. That question is not

before us, nor is the question as to whether some other stockholder may not have a right to intervene.

HARDIN, P. J., and PARKER, J., concurred.

Judgment reversed and a new trial ordered, costs to abide the event.