## Case No. 2,025.

### BROWN et al. v. PACIFIC MAIL STEAMSHIP CO. et al.

[5 Blatchf. 525.][1]

Circuit Court, S. D. New York. Nov. 20, 1867.

CORPORATIONS—STOCK—PROXY—INJUNCTION —APPLICATION — JURISDICTION — REMEDY AT LAW—CORPORATIONS — ELECTION OF OFFICERS—IRREPARABLE INJURY — NOTICE OF APPLICATION FOR INJUNCTION—SERVICE—PARTIES—PROCEDURE.

1. An irrevocable power of attorney or proxy, given by an owner of stock in a corporation, to vote upon such stock, reserving certain privileges to such owner in regard to the manner of dealing in the stock and withdrawing from such ownership, is not contrary to public policy or open to objection.

2. Where an affidavit, to oppose a motion for an injunction, is made by a defendant in a suit in equity, and such affidavit denies one of the allegations of the bill, but does not deny other material allegations charged as within the knowledge of the defendant individually, every intendment must be taken most strongly against the defendant, as an admission of all the matters stated in the bill, which the affidavit does not controvert.

3. In order to deprive a court of the United States of jurisdiction in equity, because the remedy at law is plain, adequate and complete, the remedy at law must be as efficient to the ends of justice, and its complete and prompt administration, as the remedy in equity.

4. An election of the directors of a corporation, made by holders of less than one-half of the shares of stock, is legal, although it is effected by the exclusion from voting, by the injunction of a proper court, having jurisdiction, of the holders of other shares.

5. It is common, to produce a positive effect, through an injunction out of chancery, by means of a prohibitory order, and a mandatory order is, in courts of equity, seldom denied, unless the remedy at law is perfectly adequate.

6. A case of irreparable injury to the plaintiff, and one where no such injury can be produced to the defendant, is one eminently of equity jurisdiction.

7. Under the statute of the United States, which requires reasonable previous notice of an application for injunction to be given to the adverse party, notice to a corporation, at its office, is notice to the directors of such corporation.

8. A defendant, whose affidavit is used to oppose an application for an injunction, is concluded from setting up a want of sufficient notice of such application.

[See Thayer v. Wales, Case No. 13,871; Marsh v. Bennett, Id. 9,110; Bell v. Ohio Life Ins. Co., Id. 1,261; Bradley v. Reed, Id. 1,785.]

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

9. Service of notice of such application on a corporation, at its office, cannot be considered as service on such shareholders of the corporation as are not directors of it.

10. Where it is shown that a defendant is seeking to do an act, as proxy for a shareholder in a corporation, against doing which he ought to be enjoined, he will be so enjoined, although his principal is not a party to the suit and is not enjoined.

11. Where it would oust the jurisdiction of this court to make a party plaintiff a person applying to be made such, he will be made a party defendant, where, by that being done, he can equally have the benefit of the suit.

12. The 47th and 48th of the rules of practice for the courts of equity of the United States, prescribed by the supreme court, applied to the question of parties in this suit.

[Cited in Plummer v. Connecticut Mut. Life Ins. Co., Case No. 11,232; Belding v. Gaines, 37 Fed. 819; Hamilton v. Savannah, F. & W. Ry. Co., 49 Fed. 420.]

13. In regard to granting an injunction, it is regular to proceed against defendants who have been served with process or notice, and are before the court, although other defendants have not been served.

In equity. This was an application for a provisional injunction, founded on a bill of complaint and affidavits. The plaintiffs [William R. Brown and others] were aliens, subjects of Great Britain. The defendants were the Pacific Mail Steamship Company; Frederick Billings, Isaac Taylor and Rufus G. Beardslee, inspectors of election of said company; the Atlantic Mail Steamship Company; George B. Hartson, Spencer K. Green, Charles A. Meigs, Orlando W. Joslyn, Frederick Butterfield, William H. Seward, Junior, Anthony W. Dimock, Oliver Charlick, Thomas F. Mason, Henry S. Camblos, Frederick M. Lockwood and Charles F. Davenport. The two companies, defendants, were corporations created by the state of New York. The other defendants, except Butterfield, were citizens of the state of New York. [Granted.]

Charles O'Conor, Samuel J. Tilden, William M. Evarts, and Clarkson N. Potter, for plaintiffs.

Lewis B. Woodruff, James Emott, Charles A. Rapallo, and Aaron J. Vanderpoel, for defendants.

BLATCHFORD, District Judge. This case, except as to the defendant Butterfield, is one where the court clearly has jurisdiction of the parties. The plaintiffs set out that they are the owners of 3,500 shares of the capital stock of the Pacific Mail Steamship Company. This company, it appears, has a capital now of $20,000,000, divided into 200,000 shares of $100 each. The bill then alleges, that the firm of Brown Brothers & Co., of the city of New York, have standing in their names 77,839 shares of the capital stock of this company. It then sets out the character of the Pacific Mail Company, its progress, and the development of its business, and alleges certain reasons which existed at the time for making a cer-

tain contract, which was made in October, 1864, with Brown Brothers & Co. These reasons were, in substance, the creation of a permanent shareholding body, not liable to the changes and fluctuations of the stock market. By this agreement it appears, that some ten persons associated themselves together and bought 10,000 shares of stock, which at that time was one-quarter of the entire capital, and that they made Brown Brothers & Co. trustees of that stock. The written agreement in regard to this stock, which is set out in the bill, shows that the arrangement was to continue in force until the 1st of December, 1868. The provisions of the agreement substantially are, that the parties to it are not to sell their stock without having first offered to sell it to the rest of their associates, at a price not above the then current market value, and, in case of their declining to take it, without next offering it to Brown Brothers & Co.; but any one of the parties is to be at liberty to withdraw on those terms at any time. The agreement also takes the shape of an irrevocable power of attorney to Brown Brothers & Co., to vote upon the stock; and all increase of such shares of stock, by stock dividends, until the 1st of December, 1868, is to come under the same agreement. In this respect, the agreement seems to differ very little from a mere power of attorney, or proxy, to Brown Brothers & Co., to vote upon these shares, with the addition that the power is irrevocable, and that there are certain privileges reserved to the owners of the stock in regard to the manner of dealing in it, and withdrawing from the arrangement. I am unable to perceive anything in this agreement contrary to public policy, or anywise open to objection; and there is no affidavit produced here, on the part of any one concerned in this arrangement—any one who is a principal of these agents or trustees—complaining of anything wrong in regard to the administration of the trust, or that there is any prejudice by having the stock in the position in which it is placed.

Then there is a second agreement set out, whereby, as the bill alleges, the Atlantic Mail Steamship Company became stockholders in the Pacific Mail Company to a certain amount of stock, and made Brown Brothers & Co. their trustees, under an agreement running for the same length of time, namely, until December 1st, 1868, with an irrevocable power of attorney to Brown Brothers & Co. to vote upon such stock, and a provision that the stock was not to be sold unless it was offered to be sold first to the Pacific Mail Company. For all the substantial purposes of this motion, this agreement is, in substance and effect, the same as the first one.

The bill then sets out the further development of the Pacific Mail Company on the Atlantic side, and the extension of its operations, by a line to China and Japan, con-

sisting of large steam vessels, and the further increase of its capital stock, in November, 1866, to $15,000,000, and, in January, 1867, to $20,000,000. It also states, what is quite apparent, that this increase of stock diminished the proportion which the stock standing in the names of Brown Brothers & Co. bore to the entire stock. It then sets out, that the number of shares under the first agreement has, by the increase of it, through stock dividends, increased to 26,666 shares, which number of shares is held by Brown Brothers & Co. in trust under that agreement. It also states, that the number of shares held by Brown Brothers & Co. under the second agreement is 26,666. It then sets out the facts connected with a third lot of shares standing in the name of Brown Brothers & Co., to the number of 24,315 shares, of which 24,072 shares were issued at one time to Leonard W. Jerome, and were by him transferred to Allan McLane, trustee, and by him transferred to Brown Brothers & Co. But I do not perceive that any relief is asked in regard to this third lot of shares.

The bill then sets out that there is an election for directors of the Pacific Mail Company coming on to-day at 12 o'clock; that four of the defendants, Hartson, Joslyn, Green and Butterfield, have been engaged in soliciting proxies for the purpose of voting on shares of stock at such election, based upon statements such as appear in a circular signed by them, of which a copy is annexed to the bill; and that Mr. Hartson has threatened to have the directors of the company changed. It then avers, that the defendants Lockwood and Davenport have associated themselves with the defendants Hartson, Green, Joslyn and Butterfield, for the purpose of changing the directors of the company. It then avers, specifically, that the charges contained in this publication by Hartson, Green, Joslyn and Butterfield, are unfounded. Those charges relate, generally, to breaches of trust, and unfaithful administration on the part of the trustees, Brown Brothers & Co. No averment is made by the defendants, in any manner whatever, that these charges are well-founded. On the contrary, the allegation in the bill, that the charges are unfounded, is virtually admitted, by not being denied. No averment is made, on the part of the defendants, that the trusts have been improperly discharged by the trustees. The bill then sets out, that, at every election that has taken place since the trusts were reposed in Brown Brothers & Co., the election has always been made by votes other than those cast by Brown Brothers & Co.; in other words, as I understand, that the elections have always been unanimous, and have not been controlled by the votes cast by Brown Brothers & Co. on the shares held by them in trust. The bill then sets out, that Hartson, Joslyn, Green and Charlick, and their associates, have purchased a large number of shares, some 30,000 to 35,000, which shares stood, at the close of the books, in their names, or in the names of persons believed to be associated with them in this movement, for the purpose of getting control of the company, and that they have bought, or arranged to control, a large number of proxies, so that, without corresponding beneficial interest in the shares they represent, and without any choice by the persons who are really beneficially interested in the shares so held by them, they seek to control the election, and carry on and control the company. Upon that point, an affidavit is produced, signed by Hartson, Green, Joslyn and Charlick, in which they deny that they have bought proxies, but they do not deny that they have arranged to control them. This affidavit denies nothing in the bill, except the allegation that they do not own the stock which, at the close of the transfer-books, stood in their names. It is confined to the one simple point of their still owning the stock which stood in their names at that time.

The bill then avers, that the parties engaged in this transaction will still be in a minority of votes, and that, therefore, they purpose to do certain things. No allegation or averment is set up by the defendants, by affidavit, that they do not purpose to do the things alleged, and those things, as set out in the bill, are the following: (1) To obtain an ex parte injunction from some court or judge, forbidding Brown Brothers & Co. from voting upon the shares held by them; (2) To obtain such injunction upon the pretence that Brown Brothers & Co. have improperly acquired, or are about to improperly make use of, the shares held by them, or upon other inaccurate, ill-founded, or partial statements; (3) That such pretences will be erroneous, unjust, and wholly unfounded; (4) That the injunction will not be obtained, or, if obtained, will not be served, until immediately upon such election; (5) That the effect will be to exclude Brown Brothers & Co. from voting on the 53,332 shares held by them, whereby a minority of stockholders will succeed in choosing a board of directors, against the wishes of the majority, and of the plaintiffs. No one of these averments is denied or controverted. On the contrary, by the making of the affidavit which has been made by four of the defendants upon one point, every intendment must be taken most strongly against the parties, as an admission of all the matter stated in the bill which the affidavit does not controvert, although the statement in the bill of these allegations, and the absence of any denial of them, would be sufficient of itself.

The bill then sets out, as a ground of apprehension that these things may be done, that Hartson and his associates did substantially the same things, in reference to an election of directors in another company, quite recently. That is not denied. It then

sets out, that Hartson is the president of the Atlantic Mail Steamship Company, and that he and Green, Meigs, Joslyn, Butterfield, Seward and Dimock are directors of the Atlantic Mail Steamship Company, and control the same, and hold the great mass of the capital stock thereof. It then avers, that the consequences of this meditated transaction will be disastrous to the Pacific Mail Company, and to the common interests of all the shareholders. That is not denied. The bill then points out in what manner it will be so disastrous, with considerable detail and particularity. These averments are not denied. The details are then given in the bill, of what Hartson, Green, Joslyn, and their associates intend to do to the injury of the plaintiffs and of other stockholders; and this averment is not denied. The bill then sets out, that Hartson and his associates are a combination of stock operators and stock speculators, who are designing and intending, in this way, to control a company to whose true prosperity, and to the interests of whose shareholders, their other interests are adverse. This averment is not denied.

Certainly, if there ever was a case for relief of some kind by injunction, this case is one of that kind, to prevent the commission of so great and admitted a wrong, wholly undefended. It is a case in which there would be no adequate remedy at law; because the law, as settled by the supreme court of the United States, in regard to the jurisdiction, in suits in equity, of the courts of the United States, in view of the statute, which declares that there shall be no remedy in equity where there is a plain, adequate and complete remedy at law, is, that the remedy at law must be as efficient to the ends of justice, and its complete and prompt administration, as the remedy in equity. Now, in the present case, the election, taking place under these circumstances, which it is thus admitted will be the circumstances of the case, would be perfectly legal, although accomplished in this way by a minority of the votes. There would be no ground, so far as I am able to perceive, for setting aside the election, because an injunction, obtained from a proper court having jurisdiction, had excluded certain persons from voting.

In this case, no want of time to meet the charges of the bill has been set up; no application to postpone the motion has been made; the parties have been represented by able counsel, in a hearing of some six hours, while the allegation in the bill is admitted, that the defendants intend to procure an injunction of the description alleged in the bill, without giving the plaintiffs or Brown Brothers & Co. any opportunity of being heard. As I before remarked, four of the defendants have made an affidavit upon one minor point, and have denied nothing else. They must, therefore, be held to admit everything which they do not deny. Under

these circumstances, it certainly would be a reproach to the administration of justice, if these foreigners could have their property invaded in this way, by measures admitted to be wholly without any ground to support them, without any means of relief.

As to the character of the injunction asked for, it is laid down, in Judge Redfield's Treatise on the Law of Railways (volume 2, § 221), that "it has been common to produce a positive effect, through an injunction out of chancery, by means of a prohibitory order," and that a mandatory order is, in courts of equity, seldom denied, unless the remedy at law is perfectly adequate. And this case presents a case eminently of equity jurisdiction—a case of irreparable injury to the plaintiffs, and a case where no such injury can be produced to the defendants. Indeed, under the averment of the bill, that these transactions of the defendants will produce great injury to the interests of all the stockholders, and the admission, or absence of denial, of such averment, it is clear, that there can be no injury to the proper interests of such of the defendants as are existing shareholders in the Pacific Mail Company, by granting an injunction; whereas, it is manifest, from the statements of the bill, that there is a clear case of probable irreparable injury to the plaintiffs.

I have, after a careful examination of the five prayers for injunction in the bill, come to the conclusion that the first, second and third must be substantially granted; but, as to the fourth and fifth, I do not see any ground for granting an injunction in regard to them. They stand on very different grounds from the first three. As to the first prayer for injunction, I grant it substantially as prayed for, except as to the defendant Butterfield, who is not a citizen of the state of New York. I do not think the court has any jurisdiction whatever of him, under any aspect of the case. Lockwood and Davenport have been served. Hartson and Joslyn are directors of the Atlantic Mail Company, and process was served upon the company, at its office. Under the statute, which requires reasonable previous notice of an application for an injunction to be given to the adverse party, I think, so far as any one of the defendants who is a director of the Atlantic Mail Company and has not been served, is concerned, that he has had reasonable notice, by the service on the company, at its office. Hartson, Joslyn, Green and Charlick, however, come in under another aspect of the case. They have made an affidavit in this suit, which has been used to oppose this motion, and, under the circumstances, I think they are concluded from setting up a want of sufficient notice.

As to the second prayer for injunction, Butterfield must be excluded from that, of course; and I cannot grant that, as concerns the other shareholders generally of the Pacific Mail Steamship Company; and the

words "and all other the shareholders of the Pacific Mail Company," which are in the prayer of the bill, must be stricken out from the injunction. I do not think I can enjoin the other shareholders without notice, or that service upon the Pacific Mail Company is to be considered, for the purpose of this second prayer, as service on such other shareholders.

The third prayer for injunction is, I think, a proper one as to the defendants served, Butterfield being, of course, excepted, if he has been served. It is also proper as to Hartson, Joslyn, Green and Charlick, some of whom have been served, and some of whom, I believe, have not been served. But all four of them come in, under the previous remarks, because of the affidavit which they have made. As to the defendants Meigs and Seward, and any others not before mentioned, so far as they are directors of the Atlantic Mail Company, I think that they have substantially had notice. Therefore, under the third prayer, all the directors of the Atlantic Mail Company may be included in the injunction.

The fourth and fifth prayers do not, I think, fall at all within the principles upon which the first, second and third are granted; and, without expressing at length my views in regard to them, I decline to grant the injunction prayed for in them.

In regard to so much of the second prayer for injunction as seeks to extend the injunction, to forbid the defendants from voting, as proxies, for such stockholders, who are not parties and are not themselves enjoined, as have given their proxies to some of the defendants who are enjoined, the gravamen of the bill is, that the defendants have combined to conduct their intended operations by means of proxies obtained from shareholders; and that averment is not denied. The defendants deny that they have bought proxies, but they do not deny that they have arranged to control such proxies. I think that the court, having its hand upon Hartson and his associates in these transactions, has a right to restrain them from doing anything in that regard, either individually or as proxies; especially, as the bill sets out, and it is admitted, that the means by which he is seeking to carry on this scheme, is by procuring proxies. I do not mean to restrain the parties giving the proxies, because they are not parties to the suit, but I think that Hartson and his associates, no matter in what capacity they act, whether individually or as agents or attorneys, must be restrained by the court; otherwise, the whole injunction might be utterly ineffective. By the allegations of the bill, Hartson and his associates are engaged in these transactions, which the court decides are improper ones, and they, therefore, ought to be restrained in every capacity.

In regard to the petition presented by Wheeler, asking to be made a co-plaintiff in the bill, I think the point is disposed of by the rules in equity prescribed by the supreme court. A case like this one was probably foreseen, and is provided for in the 47th and 48th of the rules of practice for courts of equity. The 47th rule provides, that in all cases where it shall appear to the court, that persons who might otherwise be deemed necessary or proper parties to the suit, cannot be made parties by reason of their being out of the jurisdiction of the court, or incapable otherwise of being made parties, or because their joinder would oust the jurisdiction of the court as to the parties before the court, the court may, in their discretion, proceed in the cause without making such persons parties; and, in such cases, the decree shall be without prejudice to the rights of the absent parties. The 48th rule provides, that where the parties on either side are very numerous, and, cannot, without manifest inconvenience and oppressive delays in the suit, be all brought before it, the court, in its discretion, may dispense with making all of them parties, and may proceed in the suit, having sufficient parties before it to represent all the adverse interests of the plaintiffs and the defendants in the suit who are properly before it, but, in such case, the decree shall be without prejudice to the rights and claims of all the absent parties. These rules have been acted upon ever since they were adopted, in reference to cases of this kind, particularly in regard to corporations where the stockholders are numerous, and reside in various places. But, independently of all that, it is apparent that, in this case, to make Wheeler, who is a citizen of the state of New York, a party plaintiff, would oust the jurisdiction of the court; and, under those circumstances, irrespective of the rules referred to, the rule of equity would be, to make the person a party defendant, and not a party plaintiff. It is not at all necessary, in order to give to Wheeler, as a stockholder in the Pacific Mail Company, the benefit of this suit, that he should be made a co-plaintiff. He may come in and contribute to the expenses of the suit, and avail himself of the benefits of it, by being made a defendant. But the 47th and 48th rules dispose of the whole question, and, upon the statements made in the bill, it would hardly be a proper exercise of discretion, for the court to refuse to proceed in the case without making Wheeler a party plaintiff, when, to make him such, would oust the jurisdiction of the court in regard to the parties before it, and sufficient parties are before it to represent all the adverse interests of the adverse parties who are properly before it. The 48th rule disposes, also, of the objection taken on the part of the defendants, founded on an affidavit put in by them, that there are shareholders in the Pacific Mail Company, who are citizens of the state of New York, and are not made parties defendant. In regard to the objection raised,

that an injunction cannot go against parties who have been served with process or notice, because some of the defendants have not been served, I do not understand that, according to the usual practice in equity, it is not regular to proceed against the defendants who are served, and are before the court, so far as an injunction is asked against them and may be proper. An injunction is asked against the three inspectors of election, in the first place, and they have been served. The two corporations have been served. An injunction is also asked against certain individuals, some of whom have been served and some have not. In regard to parties who have not been served, the court cannot grant an injunction against them, unless they are persons holding such a position as that they can be considered a single party, for the purpose of restraining them from doing a particular act in which all are concerned—such as being members of a body of trustees or of the board of directors of a corporation. But, so far as parties are concerned who are sought to be restrained from doing individual acts in individual matters, the court has no power to include them in an injunction without previous notice to them. That, however, is no reason why, in this case, an injunction may not go against the corporations, or the inspectors of elections, or any individuals who have been served, if the case is otherwise a proper one for an injunction against them.

NOTE [from original report]. The injunction issued was as follows, omitting the formal parts: "You, the said defendants respectively, and your respective associates, attorneys, proxies, substitutes, officers, directors and agents, are restrained, and formally enjoined as follows, that is to say: First—That you, the said Frederick Billings, Isaac Taylor and Rufus G. Beardslee, inspectors of election, your successors, and all and every other person who may in any way be appointed or selected to serve as inspectors of election, to hold any election for directors of said Pacific Mail Steamship Company, do absolutely desist and refrain, until the further order of the said court, from holding any election on said 20th day of November, A. D. 1867, or any other day, wherein or whereat Brown Brothers & Co. are enjoined and forbidden, or prevented, by the judgment or process of any competent court, from casting, or said or any inspectors are prevented from receiving, the votes of Brown Brothers & Co. upon 26,666 shares of the capital stock of that company, standing in their names 'in trust,' being the shares held under the arrangement with Skiddy and others, or upon the 26,666 shares of the stock standing in their names as 'trustees,' being the shares held under the agreement between the said Pacific and Atlantic Mail Companies, and from receiving any vote or votes on the part of the said defendants Hartson, Joslyn, Green, Charlick, Lockwood and Davenport, or either of them, in person or by proxy, or as the proxy or substitute, in any wise, of any other person, unless the said Brown Brothers & Co. shall first have had an opportunity to vote upon all the shares held by them, except only the 24,072 shares formerly standing in the name of Allan McLane, trustee. Secondly—That you, the said defendants Hartson, Joslyn, Green, Charlick, Lockwood and Davenport, and your and each of your associates, attorneys, agents, proxies and substitutes, do absolutely desist and refrain from aiding in or appointing any inspectors of election, or co-operating or voting, either in person or by proxy, or as proxy or attorney or substitute for any other person, at the said ensuing election for directors of the Pacific Mail Steamship Company, or any election for directors of that company, until the further order of the said court, upon any shares whatever, unless the said Brown Brothers & Co. shall first have had an opportunity, free from injunction of any kind, of voting upon said shares so held by them in trust and as trustees, or otherwise, as aforesaid, except only said 24,072 shares, except the defendants Butterfield, Mason and Camblos. Thirdly—That, until the further order of the said court, you, the said defendants, and each and every of you, your directors, agents, officers, servants and proxies, do absolutely desist and refrain from any proceedings to restrain or prevent the firm of Brown Brothers & Co., or any member of that firm, from voting at the election for directors of the Pacific Mail Steamship Company, to be held in the city of New York on the 20th day of November, 1867, upon those shares of stock standing in the name of that firm on the books of the said company, mentioned or referred to in the agreement between Francis Skiddy, Charles A. Davis, Allan McLane, Howard Potter, William Dennistoun, Moses H. Grinnell, Leonard W. Jerome and Elisha Riggs, bearing date the 11th day of October, 1864, or upon those other shares of stock mentioned or referred to in the agreement between the Pacific Mail Steamship Company and the Atlantic Mail Steamship Company, bearing date the 19th day of October, 1865, or on any of the said shares in either of the said two parcels of stock, and from in any way, manner, or form, directly or indirectly, obstructing, impeding or opposing the giving or reception of the vote of said firm, or of any member thereof, at such election, on said stock or any part or portion thereof."