FRANK W. BRIGHTMAN *vs.* LOT B. BATES.
SAME *vs.* JAMES E. DWIGHT.

Bristol.    October 23, 1899. — January 3, 1900.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

*Covenant — Acceptance — Corporation — Syndicate Agreement —*
*Pooling Contract.*

A covenant executed by the defendants and delivered to the plaintiff recited that a certain number of shares of the stock of a corporation had been or were about to be purchased by a syndicate under an agreement of a certain date; that the plaintiff was largely instrumental in organizing the syndicate ; and that " he considers that for his services therein in case the syndicate is formed, and the aforesaid shares purchased, he should receive for his compensation " a certain amount of stock.  These recitals were followed by several covenants on the part of the defendants and another to give the plaintiff in stock of the corporation at a certain price per share a commission of a certain sum a share " upon the number of shares of said stock we sell to said syndicate, less the number of shares we have severally subscribed as members of said syndicate," and certain other deductions, in case the compensation was not got from the syndicate. *Held,* that the covenant properly might be found, if not ruled, to be made to the plaintiff; that beyond acceptance of the delivery to him no other acceptance or notice of acceptance was necessary; and that the contract was intelligible. *Held, also,* that it could not be said that the judge was not warranted in finding that whatever efforts to get the compensation from the syndicate were necessary before coming on the defendants had been made.

A written agreement, whereby the subscribers recite their desire to become members of a syndicate to the end that control of a corporation and advantage to them may be gained, agree to take the shares set against their names at a certain price a share, and further agree after the purchase to enter into a pooling contract, whereby all the syndicate stock " shall be voted at each annual meeting for a period of not less than three years, for such board of directors as shall be named " by a committee of five of the subscribers, with power to a majority of them to fill any vacancy in the committee, is lawful.

Two ACTIONS OF CONTRACT upon the following instrument, dated September 22, 1894, and executed by J. A. Beauvais and by the defendants respectively :

" Whereas, 1,360 shares in the capital stock of the Union Street Railway Company, in New Bedford, have been, or are about to be, under an agreement dated Sept. 4, 1894, taken and purchased by a syndicate composed of J. A. Beauvais, J. N. Beckley and others ;

" And Whereas Frank W. Brightman of Fall River has been largely instrumental in organizing said syndicate, and he considers that for his services therein in case the syndicate is formed, and the aforesaid shares purchased, he should receive for his compensation the sum of ($5,000) five thousand dollars in the stock of said Company at $169 a share, at its present capitalization ;

" Now, the said Frank W. Brightman agrees to use his best endeavors to obtain that compensation from the said syndicate as a whole, and the said J. A. Beauvais agrees to use his influence to secure to the said Brightman the aforesaid compensation. If the efforts of the said Brightman and the said Beauvais shall be unsuccessful, in that behalf, we whose names are hereto subscribed, agree, severally, to pay said Brightman, in stock of said Company, at $169 a share, a commission of $4 per share upon the number of shares of said stock we sell to said syndicate, less the number of shares we have severally subscribed as members of said syndicate, and less, also, on such shares as we, or either of us have assumed certain obligations to induce parties to become members of said syndicate.   In case said Brightman should receive from said syndicate a part of said compensation, then the subscribers hereto are not to be required to contribute and pay the commission as above to said Brightman on more shares than will be sufficient to make up said sum of ($5,000) five thousand

dollars; in which case, the proportionate part that they severally pay as members of the syndicate, shall be credited them in the proposed settlement as above set forth."

The material provisions of the agreement referred to in the above-named instrument were as follows:

"Whereas, 1,360 shares of the capital stock of the Union Street Railway Company, of New Bedford, Mass., can be purchased, out of a total capital stock of 2,600 shares, by the subscribers hereto at the price of $169 per share;

"And Whereas, the undersigned are desirous of becoming members of the syndicate for the purchase of such stock, to the end that thereby control may be obtained of said railway company and gain and advantage accrue to the several subscribers hereto;

"Now therefore, in consideration of the premises, and of one dollar paid by each of the subscribers hereto to the others, the receipt whereof is hereby acknowledged, we, whose names are hereunto subscribed, do severally agree to take, and, on demand, pay for the number of shares of stock of said railway company set opposite our respective names, at the price of $169 per share; and after the purchase of such stock to enter into a pooling contract under the provisions of which all such stock so purchased shall be voted at each annual meeting for a period of not less than three years, for such Board of Directors as shall be named by" five persons enumerated, "or a majority of them, with power granted to a majority of the persons so named, as pooling committee, to fill any vacancy which may occur from any cause in the membership of such committee.

"The payment of such stock to be made to J. A. Beauvais ten days after notice to the subscriber from him to the effect that the whole 1,360 shares of said stock proposed to be purchased has been subscribed for.

"Said J. A. Beauvais agrees to obtain and deliver to the several subscribers hereto the number of shares of said stock subscribed for by each of the signers hereof upon the payment to him of the purchase price of the same. This obligation is assumed, however, on the mutual understanding that the said J. A. Beauvais has now in his possession a majority of the said 1,360 shares, and that on a minority thereof he holds good and valid

written contracts, from the owners thereof, for its sale and delivery to him, upon the payment to them of the said purchase price of $169 per share ; and that he shall not be held personally responsible in respect to the delivery of the stock not in his possession except for the faithful enforcement of the written contracts he holds as aforesaid ; and to which enforcement he pledges his best efforts.

" This contract shall not be binding upon any subscriber unless the whole number of 1,360 shares of stock has been hereto subscribed for, on or before the 5th day of October, 1894."

The cases were tried together in the Superior Court, without a jury, before *Hardy*, J., who found for the plaintiff in each case; and, at the request of the defendants, reported the cases for the determination of this court. The facts appear in the opinion.

*L. LeB. Holmes*, for the defendants.

*H. M. Knowlton*, for the plaintiff.

HOLMES, C. J. These are actions upon a covenant executed by the defendants. The covenant recites that 1,360 shares of the stock of the Union Street Railway Company in New Bedford have been or are about to be purchased by a syndicate, under an agreement of September 4, 1894, that the plaintiff has been largely instrumental in organizing the syndicate, and that " he considers that for his services therein in case the syndicate is formed, and the aforesaid shares purchased, he should receive for his compensation " a certain amount of stock. These recitals are followed by several covenants on the part of the defendants, and one other to give the plaintiff, in stock of the company at $169 a share, a commission of $4 a share " upon the number of shares of said stock we sell to said syndicate, less the number of shares we have severally subscribed as members of said syndicate," and certain other deductions, in case the compensation was not got from the syndicate. The judge before whom the case was tried found for the plaintiff, and the case is here upon a report of requests for rulings which in various forms raise the question whether such a finding can be justified in law.

Before going further we will dispose of one or two objections which were not the main ground of defence and were not much pressed. The covenant was delivered to the plaintiff, and prop-

erly might be found, if not ruled to be made to him.   Beyond
acceptance of the delivery to him no other acceptance or notice
of acceptance was necessary.   The contract is intelligible.   We
cannot say that the judge was not warranted in finding that
whatever efforts to get the compensation from the syndicate
were necessary before coming on the defendants had been
made.   The 1,360 shares were subscribed for, and although some
of the subscriptions were upon stipulations, that does not affect
the case, because all the stock was taken and paid for before the
action was brought.   We pass to the principal defence.

The syndicate referred to was formed under another written
agreement, whereby the subscribers recite their desire to become
members of it to the end that control of the railway company
and advantage to them may be gained, agree to take the shares set
against their names at $169 a share, and further agree after the
purchase to enter into a pooling contract whereby all the syndi-
cate stock " shall be voted at each annual meeting for a period
of not less than three years, for such Board of Directors as shall
be named " by a committee of five of the subscribers, with power
to a majority of them to fill any vacancy in the committee.   It is
said that this agreement was illegal, and that the covenant sued
upon was so directly aimed at helping to bring the unlawful
arrangement about that it must fall with the other.   *Barnes* v.
*Smith*, 159 Mass. 344, 347.   *Gibbs* v. *Consolidated Gas Co.* 130
U. S. 396.

With regard to this contention it is to be observed in the first
place that the syndicate agreement is dated September 4, and
the covenant is dated September 22, and, as we have said, recites
that the shares " have been, or are about to be " purchased.
That is, the sale is treated as already certain.   Although one or
two subscriptions seem to have been signed a day or two later,
we do not perceive why the judge may not have found that the
services all had been rendered at the date of the covenant, and
in view of the defendants' testimony that they never heard of
those services before September 22, why he may not have found
that the covenant was a voluntary one, the legality of which
would not be affected by the nature of the executed transaction
which happened to furnish a motive for making it.   *Gray* v.
*Mathias,* 5 Ves. 286.

Without deciding whether, if the covenant was dependent upon the rendering of further services, it was so closely connected with the syndicate agreement as to fall if the latter cannot be sustained, we pass to the question whether the latter agreement is unlawful on its face, bearing in mind that unless it is unlawful on its face it has the advantage of a finding in favor of the plaintiff. In dealing with this question it does not need to be said that combination of common interests is necessary, and constantly is taking place. It is as legitimate for a majority of stockholders to combine as for other people. The fact that they expect " gain and advantage " — in the words of the syndicate agreement — to accrue to them, does not make the combination unlawful. That expectation and intent would have that effect only if the gain was to be at the expense of the corporation, or in some way was intended to work a wrong to the other stockholders. No such intent appears, and although it is impossible not to view such an arrangement with suspicion, it is also impossible to let suspicion take the place of proof.

The only serious ground of objection is the agreement that the stock " shall be voted at each annual meeting " for three years, for a board of directors named by the committee. It is suggested that this was an unlawful attempt by the contracting parties to deprive themselves in advance of their deliberative power and duty as stockholders, and to submit themselves to the dictation of five men who in the future might not be even members of the corporation. Perhaps the notion upon which these suggestions are founded has been pressed somewhat further than would be warranted by more far-seeing views, but we have no occasion to discuss it in this broad form. The question before us is not whether it would be possible to carry out the contract in a way which would have made the contract bad if specified in it, but whether it was impossible to carry out the contract in a way which might lawfully have been specified in advance. We put the question in this form because there is no doubt that the subscribers might actually have done the things stipulated without giving any one a right to complain. That is to say, they might have held their stock and voted by previous understanding according to the advice of the committee, as long as they chose. The question is what they might contract to do; for

this is supposed to be a case where a contract to do lawful acts is unlawful.

The syndicate agreement does not specify how it is to be carried out. It contemplates the making of another contract. As the later contract is to be a pooling contract, it was possible, if not probable, that one element of the arrangement would be that the title to the stock should be given to a trustee, and this happened in fact. During the three years the stock seems to have been held by a bank. The stock was transferred to it, and was not transferred to the members of the syndicate. But it would have been possible, consistently with the terms of the syndicate agreement, that the committee who were to name the board of directors themselves should be the trustees. In that case the trustees, of course, would have voted on the stock. They, not their *cestuis que trust*, would have been the stockholders for the time being. We know nothing in the policy of our law to prevent a majority of stockholders from transferring their stock to a trustee 'with unrestricted power to vote upon it. *Brown* v. *Pacific Mail Steamship Co.* 5 Blatchf. 525, 527. See *Greene* v. *Nash*, 85 Maine, 148.

Supposing that the committee had been trustees, what would the syndicate agreement have amounted to then? Merely an agreement by each of the trustees to vote as they should jointly agree to vote, and an agreement by the subscribers not to demand back their shares for three years. The latter term certainly is not illegal, whether valid or not. A stockholder has a right to put his shares in trust, whatever his motive. If the trust is an active one he cannot terminate it at will, and the attempt to cut himself off by contract, instead of by the imposition of duties, from ending it, certainly is not enough to poison the covenant with the plaintiff. See *Williams* v. *Montgomery,* 148 N. Y. 519, 525. It might be held that the duty of voting incident to the legal title made such a trust an active one in all cases. As to the arrangement for the trustees uniting to elect their candidates, the decisions of other States show that such arrangements have been upheld, and we do not think that it needs argument to prove that they are lawful. If stockholders want to make their power felt, they must unite. There is no reason why a majority should not agree to keep together. *Faulds* v. *Yates,*

57 Ill. 416. *Smith* v. *San Francisco & North Pacific Railway*, 115 Cal. 584. *Havemeyer* v. *Havemeyer*, 11 Jones & Spen. 506, 512, 513. Affirmed, according to Beach, Corporations, § 304, n. 6, and *Fisher* v. *Bush*, 35 Hun, 641, in 86 N. Y. 618. See *Brown* v. *Pacific Mail Steamship Co.* 5 Blatchf. 525, 527.

We have considered such decisions elsewhere as have been called to our attention or found by us. Few of them are by courts of final resort. Nothing that we have found in them satisfies us that the judge below was not warranted in finding for the plaintiff.                    *Judgment for the plaintiff.*