Lopez, J.
The plaintiff, Arthur S. Demoulas (Arthur S.), a shareholder in Demoulas Super Markets (DSM) and Valley Properties, Inc. (Valley), brings this derivative action pursuant to Mass.R.Civ.P. 23.1 against the defendants who include DSM, various other corporations, Telemachus Demoulas (Telemachus), Telemachus’s wife and children, several DSM officers, and the accounting firm of Sullivan, Bille & Company. Arthur S. alleges that he and other DSM shareholders were injured when the defendants diverted corporate opportunities of DSM and Valley by establishing competing corporations[1] which were owned exclusively by Telemachus’s family. The defendants, with the exception of DSM, Valley, and Sullivan, Bille & Company, now bring this motion for summary judgment.[2] For the following reasons, defendants’[3] motion is denied.
FACTS
A.Demoulas Super Markets
DSM was originally formed in 1955 as a family-owned enterprise. Telemachus along with his wife and four children owned a fifty percent interest in the business. Telemachus’s brother, George Demoulas (George), his wife, and their four children owned the other fifty percent interest. By 1986, however, the sole remaining shareholders of DSM were George’s son, Arthur S., and Telemachus’s family which included Telemachus, his wife Irene, and their children, Arthur T. Demoulas (Arthur T.), Frances D. Kettenbach (Francis), Gloriarme D. Farnham (Gloriarme), and Caren D. Pasquale (Caren). The Board of Directors of DSM is currently comprised of Telemachus, Arthur T., James T. Curtis (Curtis) and D. Harold Sullivan (Sullivan). Curtis acts as both a director of DSM and general counsel to DSM, Valley, Doric Development Corporation (Doric), Lee Drug, Inc. (Lee Drug), Market Basket, and 231 Realty Associates (231 Realty). Sullivan is the Vice President and Chief Financial Officer of DSM and is one of the corporate directors.[4]
B.Valley Properties, Inc.
Valley was formed in 1974 as a means to own, develop, and lease shopping centers. At the time this complaint was filed, Valley owned seven shopping centers in which DSM or Market Basket stores were located. The shareholders of Valley include Arthur S., and his siblings Evan G. Demoulas (Evan), Fotene J. Demoulas (Fotene), and Diana D. Merriam (Diana) as well as Telemachus and his family, Irene, Arthur T., Frances, Gloriarme and Caren. The Valley Board of Directors has never included any members of George’s family and is now comprised of Telemachus, Arthur T, Curtis, and Sullivan.
C. Voting Trust Agreements
On January 21, 1965, the shareholders of DSM signed a Voting Trust Agreement (VTA) designating Telemachus and George as the Voting Trustees of DSM. This agreement was renewed in 1967. On June 27, 1971, George died and, pursuant to Article X of the VTA, Telemachus assumed the role of sole Voting Trustee. His position as Voting Trustee was perpetuated in each of the subsequent VTAs signed by the shareholders of DSM on March 31, 1972 and February 13, 1982. A similar VTA was signed by Valley shareholders[5] in 1974. Both the DSM and Valley VTAs contain a provision prohibiting holders of a voting trust certificate from bringing a stockholder derivative action. Specifically, Article VI states that “holders of Voting Trust Certificates shall not have any right, with respect to the stock held by the VOTING TRUSTEE, to vote, take any part in, commence or consent to any corporate or STOCKHOLDERS’ action of or against the Corporation, its officers and Directors.”
D. Corporate Opportunities
1. Market Basket
DSM, which already owned two stores with liquor licenses in New Hampshire, was precluded from opening any more similar stores in the state by the New Hampshire liquor law.[6] In an effort to circumvent the law, Seabrook Sales, Inc. (Seabrook), the precursor of *439 Market Basket, was established on June 21, 1973. Seabrook was owned by Telemachus’s sister, Ann Burliss. Seabrook signed a franchise agreement with DSM in which DSM would provide services to Sea-brook in exchange for certain fees.
Several years later another supermarket, P&P Foods, was established in New Hampshire. P&P Foods was wholly owned by Telemachus’s daughter, Frances, and became a franchise of DSM in January 1979. Frances also held an option to purchase the stock of Seabrook from Ann Burliss.
Market Basket was born in December 1983 from the merger of Seabrook and P&P Foods. Two years later, New Hampshire liquor laws were revised permitting unlimited licenses. In response to this reform, Market Basket expanded its New Hampshire operations by opening three new stores. At the time the complaint in this action was filed, Market Basket owned and/or operated thirty-five supermarkets in Massachusetts and New Hampshire and owned five shopping centers in which Market Basket stores are located.
2.Doric Development Corporation
Doric was incorporated in November 1981 with Telemachus’s daughter, Caren, acting as sole officer, director, and shareholder. Currently the Board of Directors consists of Arthur T., Frances, Gloriarme, and Caren. The enterprise was designed to manage and develop real estate ventures. Doric developed and constructed several shopping centers and DSM and Market Basket stores.
3.Lee Drug, Inc.
Lee Drug, created in October 1983, operates nine drug stores situated in shopping centers owned by the Demoulas family. Curtis was the sole officer, director, and shareholder of the corporation. The present Board of Directors is identical to the Board of Directors at Doric and consists of Telemachus’s four children.
4.231 Realty Associates
231 Realty was a partnership comprised of Telemachus, M.L. Kettenbach (Kettenbach), and Robert H. Farnham (Farnham). The partnership was formed in January 1985 to acquire land and develop shopping centers. 231 Realty owns four shopping centers in which DSM or Market Basket stores are located.
E. Seventeen Store Transfer
In 1988, the DSM Board of Directors voted to transfer seventeen DSM stores to Market Basket in exchange for payment to DSM of one percent of its sales for twelve years. This agreement was amended in November 1982, to require payment of one half of one percent of sales for the first two years and then one percent of sales for the remaining eleven years.
F. Statute of Limitations
Affidavits indicate the following shareholders, beneficial owners, and directors of DSM were aware that DSM held no interest in Seabrook: Telemachus, Irene, Arthur T., Frances, Gloriarme, Caren, James Miamis (Miamis), and Julien Lacourse (Lacourse). Similarly, the following shareholders, beneficial owners, and directors of DSM were aware that DSM and Valley did not hold any interest in Doric: Telemachus, Irene, Arthur T., Frances, Gloriarme, Miamis, Lacourse, David Lane (Lane), the comptroller for DSM, William Marsden (Marsden), and Joseph Rockwell (Rockwell). With respect to Lee Drug, Telemachus, Irene, Miamis, Lacourse, Lane, Marsden, Rockwell, and Sullivan were aware that DSM and Valley held no interest in the enterprise. Finally, Irene, Sullivan, and Curtis were aware that DSM and Valley held no interest in 231 Realty.
DISCUSSION
1. Summary Judgment Standard
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is ’entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass, at 17. “[T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eissner, 405 Mass. 297, 209 (1989).
2. Standing
The defendants allege that Arthur S. does not have standing to bring this action since the holder of a voting trust certificate is not a shareholder for the purposes of a shareholder derivative suit. This court finds that Arthur S., who is the beneficial owner of DSM and Valley stock, is a shareholder for the purposes of this suit.
The defendants rely on Brightman v. Bates, 175 Mass. 105, 111 (1900), for the proposition that once stock is transferred to a voting trust, the voting trustees become the stockholders. However, Brightman does not address whether the trustees become the sole stockhold *440 ers to the exclusion of the holders of voting trust certificates for the purposes of a derivative action. See Application of Bacon, 38N.E.2d 105,107 (N.Y.App. 1941) (voting trustees and holders of voting trust certificates are each shareholders for some purposes). While Massachusetts courts have not directly addressed this issue, the right of beneficial shareholders, such as certificate holders, to sue derivatively appears to be the prevalent trend. See Sarrouf v. New England Patriots Football Club, Inc., 397 Mass. 542, 551-52 (1986) (beneficial holders entitled to assert appraisal rights); Perry v. Perry, 339 Mass. 470 (1959) (beneficiary of trust of shares in family corporation may force examination of corporate affairs and equivalent of shareholders’ action); 13 Fletcher Cyclopedia of the Law of Private Corporations §5976 at 235 (rev. perm. ed. 1991) (weight of authority allows beneficiary to maintain derivative action); R. Southgate & D. Glazer, Massachusetts Corporation Law & Practice §15.6 at 461 (1991) (because a derivative suit is an equitable device, beneficial holders probably may sue). Consistent with the general trend, this court finds that Arthur S. has standing to bring this shareholder derivative action.
3.Fraud in Procurement of VTA
The defendants next assert that this suit is precluded by the clause in both the DSM and Valley VTAs which prohibits holders of voting trust certificates from bringing a derivative action. The threshold question is whether such a clause is valid. Massachusetts law permits a release to bar suits for “ordinary negligence.” Lee v. Allied Sports Associates, Inc., 349 Mass. 544, 550 (1965); Barrett v. Convagan, 302 Mass. 33, 34 (1938). However, a release which exempts a party from liability for harm which is intentional or grossly negligent is unenforceable. Gillespie v. Papale, 541 F.Supp. 1042, 1046 (D.Mass. 1982); Prosser, Torts §68 (4th Ed.) at 444; 6A Corbin, Contracts §1472 at 596-97; Restatement (Second) of Contracts §195. Here, where the cause of action arises from alleged diversion of corporate assets, a release for this intentional tort is invalid. Therefore, Article VI of the VTAs does not impede Arthur S.’s ability to bring this action.
Even if the agreement not to sue were binding, issues of fact remain as to whether the VTA was procured by fraud. A release does not bar subsequent actions where the release was obtained by fraud or misrepresentation. Shane v. Shane, 891 F.2d 976, 986 (1st Cir. 1989); Sher v. Sandler, 325 Mass. 348, 354 (1950). Arthur S. contends that no one ever explained to him the contents of any of the VTAs which he signed. In contrast, Telemachus and Sotakos, the trustee who signed the 1974 VTA on behalf of Arthur S., asserted that the agreements were fully explained to Arthur S. Whether Telemachus had a fiduciary relationship with Arthur S. which would have required him to disclose the contents of the VTAs, Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass. App.Ct. 412, 444 (1980), and whether he made such a disclosure is a question of fact. See Barrett v. Conragan, supra at 35 (whether there is fraud in obtaining release is question of fact).
4.Similarly situated shareholders
Defendants further assert that Arthur S. does not fairly and adequately represent similarly situated shareholders as required under Mass.R.Civ.P. 23.1.[7] The true measure of adequacy of representation under Rule 23.1 is not how many shareholders the plaintiff represents but rather how well the representative plaintiff advances the interests of similarly situated shareholders. Nagy v. Riblet Products Corporation, 1991 WL 332633 (N.D.Ind. 1991), citing Hoisted Video, Inc. v. Gutdllo, 115 F.R.D. 177, 179 (N.D.Ill. 1987). Similarly situated shareholders include those who, along with the plaintiff, are dissatisfied with the performance of the corporation. Shulman v. Ritzenberg, 47 F.R.D. 202, 211 (D.D.C. 1969). With respect to Valley, Arthur S.’s siblings, Evan, Fotene, and Diana, are clearly similarly situated shareholders who are dissatisfied with the alleged corporate diversions. The issue with respect to fellow DSM shareholders is more problematic.
AH of the shareholders and beneficial owners of DSM, namely Telemachus’s family, have renounced any interest in this suit. This leaves Arthur S. as the lone shareholder interested in pursuing this action. While it is uncommon and only in rare instances that a shareholder derivative action survives with a class of one, Smith v. Ayres, 977 F.2d 946, 948 (5th Cir.1992), this unique situation presents itself here. See Nagy v. Riblet Products Corporation, 1991 WL 332633 (N.D. Ind. 1991) (plaintiff maintains action without support of other shareholders).
In the instant case, the other shareholders are named defendants in the suit and are implicated in the alleged wrongdoing. See Hoisted Video, Inc. v. Guttillo, 115 F.R.D. 177, 179 (N.D.Ill. 1987). Furthermore, there is a suggestion that their adversity to this suit may be influenced by their personal interests rather than the corporation’s interests. See Larson v. Dumke, 900 F.2d 1363, 1368-69 (9th Cir.), cert. denied sub nom. Round Table Pizza, Inc. v. Larson, 111 S.Ct. 580 (1990) (lack of support for derivative suit, in and of itself, does not indicate that plaintiff is an inadequate representative). Although this action is one of several suits brought against the defendants, there is no reason to believe that Arthur S. is acting with any particular vindictiveness or antagonism. Cf. Smith v. Ayres, supra at 949; G.A. Enterprises, Inc. v. Leisure Living Community, Inc., 517 F.2d 24, 26 (1st Cir. 1975) (vindictiveness influences plaintiff in bringing suit). Arthur S., as the only shareholder similarly situated, can nevertheless bring this action pursuant to Rule 23.1.
5.Statute of Limitations
The defendants have aptly stated the law with respect to the applicable statute of limitations. Diversion of corporate assets is a tort with a three-year statute of limitations. G.L.c. 260, §2A; Houle v. Low, *441 407 Mass. 810, 812 (1990); Kirley v. Kirley, 25 Mass.App.Ct. 651, 653, rev. denied, 402 Mass. 1104 (1988). The statute in a shareholder derivative action does not begin to run until the shareholders or independent directors, those who had power to remedy the situation, knew of the wrongful activity. Costello v. Atlas Corporation, 297 F.Supp. 19, 23 (N.D. Cal. 1967) citing Curtis v. Connly, 257 U.S. 260 (1920). A corpo- . rate fiduciary is disinterested if he did not acquire or gain any personal interest in the purported diverted corporate opportunity. Gries Sports v. Cleveland Browns Football, 496 N.E.2d 959, 965 (Ohio 1986); Pogostin v. Rice, 480 A.2d 619, 624 (Del. 1984). While the defendants assert that Telemachus, Irene, Arthur T., Frances, Gloriarme, Caren, Miamis, and Lacourse were disinterested parties because they had no financial interest in Market Basket and they were aware of the formation of the new supermarket at the time, a question remains as to whether Telemachus and his family and longtime employees were truly disinterested or whether Arthur S. was the sole disinterested stockholder. See Gries Sports v. Cleveland Browns Football, supra at 965 (director who is beholden to another through personal or other relationships is not independent). In the latter instance, issues of fact again arise as to when Arthur S. learned of the diversions. Here, the allegations concern the fraudulent concealment of these corporate opportunities which would serve to toll the statute. G.L.c. 260, §12; Woodcock v. American Investment Co., 376 Mass. 169, 174 (1984). With numerous facts in dispute as to which directors and shareholders were disinterested and whether the alleged wrongs were fraudulently concealed, summary judgment is not appropriate on any of the statute of limitations issues.
6. Corporate Opportunities: Market Basket and Lee Drug
Finally, the defendants assert that Market Basket and Lee Drug were not corporate opportunities of either DSM or Valley. Whether a business opportunity exists depends on the unfairness of a director, who has a fiduciary relationship with a corporation, taking advantage of an opportunity for his/her personal profit when the interest of the corporation calls for protection. Wartski v. Bedford, 926 F.2d 11, 18 (1st Cir. 1991) citing Durfee v. Durfee & Canning, 323 Mass. 187, 199 (1948) (definition of business opportunity is expanded to include fundamental fairness test). Once again, numerous facts are in dispute as to whether the formation and expansion of Market Basket and the seventeen-store transfer constitute missed corporate opportunities and whether the opportunity to purchase Lee Drug was fully presented to a disinterested Board. See 3 Fletcher Cyclopedia of the Law of Private Corporations §861.1 at 287 (director must make full disclosure of opportunity to Board; disclosure includes revelation of circumstances surrounding the transaction).
7. Conspiracy
The plaintiff alleges sufficient damages with respect to his conspiracy claim to survive summary judgment.
ORDER
For the foregoing reasons, defendants’ motion for summary judgment is DENIED. Plaintiff is directed to verify his complaint within thirty (30)~days.

 These corporations include Doric Development Corp., Lee Drug, Inc., Market Basket, and 231 Realty Associates.

All defendants with the exception of Demoulas Super Markets, Inc., Valley Properties, Inc., and Sullivan, Bille & Company join in this motion.

For the purpose of this discussion, the “defendants” shall refer to the parties bringing this motion which includes all defendants exclusive of DSM, Valley, and Sullivan, Bille & Company.

Prior to joining DSM in 1983, Sullivan was a partner in the accounting firm of Sullivan & Bille. Sullivan & Bille provided accounting services to DSM, Valley, Doric, Lee Drug, Market Basket and 231 Realty.

 This agreement was signed by Stephen Sotakos (Sotakos), a trustee for Arthur S. who was a minor at the time.

 New Hampshire law prohibited any establishment from owning more than two liquor licenses.

 Rule 23.1 also requires the plaintiff to submit a verified complaint which Arthur S. has failed to do. Arthur S. 's second amended complaint supersedes his earlier verified complaints. International Controls Corp. v. Vesco, 556 F.2d 665, 668 (2d Cir. 1977). While the failure to verify this most recent complaint does not entitle defendant to summary judgment, verification is a necessary component of Rule 23.1 and must be completed within thirty days. Halsted Video, Inc. v. Guttillo, 115 F.R.D. 177, 180 (N.D. Ill. 1987).