Chapman *v.* Bates.

---

CHARLES E. CHAPMAN, complainant and appellant,

*v.*

THEODORE C. BATES and WILLIAM H. LEE, defendants and respondents.

[Filed December 18th, 1900.]

1. A proxy and power of attorney made by a stockholder in a corporation, giving voting powers and rights to deal with the stock in various ways, and to sell and exchange it, and conferring an interest, and, by its terms, irrevocable for a period less than three years, will not be revoked, upon a bill filed by the maker for that purpose, unless it appears that the

Chapman *v.* Bates.

purposes are illegal, or in violation of some statute, or against public policy.

2. What are known as pooling agreements are not necessarily illegal, but each case will depend upon the objects to be attained.

On appeal from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *15 Dick. Ch. Rep. 17.*

*Mr. Charles L. Corbin,* for the appellant.

*Mr. Charles D. Thompson,* for the respondents.

The opinion of the court was delivered by

GARRETSON, J.

The complainant, being the owner of fifty-one shares of stock of the Union Terminal Association, a corporation of this state, on the 6th day of July, 1899, executed a paper called a proxy and power of attorney, appointing the defendants his proxies and attorneys in fact, and in pursuance thereof delivered to them the certificates for said shares of stock.

This proxy and power of attorney was therein declared to be in force for the period ending January 1st, 1902, and to be and remain irrevocable during said period.

It is sought in the bill filed in this case to revoke this instrument, which, in terms, is declared to be irrevocable before the expiration of the period limited, upon the grounds that its provisions are in violation of the terms of the act concerning corporations under which the Union Terminal Association was incorporated, and are in conflict with public policy and with the laws of the State of New Jersey.

The case was heard on bill and answer and a decree dismissing the bill.

The proxy and power of attorney executed by the complainant recites that certain owners and holders of shares of the capital stock of the Union Terminal Association deem it to be for their best interests and as especially desirable to aid in securing the speedy completion of the properties represented to unite their

stock, and all that is represented therein and thereby, by placing their certificates of stock in the possession and control of certain persons, as proxies and attorneys in fact, to be held, managed and used by them, in their discretion, for the equal *pro rata* benefit of all stockholders who may join in this proposed union of interests; it then appoints the defendants proxies and attorneys in fact, to have, use and exercise any and all complainant's rights and powers in, to and under any and all of his said stock of the said Union Terminal Association, and to receive, take, retain, hold, use and employ any or all of his said stock to aid in the promotion of any and all purposes which his said proxies and attorneys in fact may deem best, and to join any and all his shares of stock of the said Union Terminal Association, and all his rights and powers thereunder with any and all shares of stock of other stockholders who may deposit their certificates of stock with said defendants, and execute and deliver to them a proxy and power of attorney of the same tenor and effect, for any and all purposes which his said proxies and attorneys in fact shall deem to be for the best interest of all such stockholders, for the period ending January 1st, 1902; this proxy to be and remain irrevocable during said period.

It authorizes the proxies and attorneys in fact, at their discretion, to vote and act upon any or all of the shares of the capital stock of the Union Terminal Association, at any or all meetings of the shareholders of said corporation. All stock deposited under the proxies to constitute one holding in the attorneys. It authorizes the proxies and attorneys in fact to make any and all demands and exercise any and all rights which he might make or exercise as a holder or owner of said stock of said Union Terminal Association, and to recover and receive all moneys and obtain payment of all indebtedness due to such holder, and to represent him in any suit and at any sale of properties in which, as a stockholder of the Union Terminal Association, he might be interested, and to make bids and use the stock for bidding for and acquiring all such properties, and to take title and dispose of such properties; to procure the organization of a corporation; to exercise all the rights granted to the attorneys; to appoint an agent to hold title to such property as

may be represented by his stock, and direct the management and disposal thereof.

It authorizes them to take all action necessary to form a corporation under the laws of Missouri; to make available all properties controlled by his stock of the Union Terminal Association, and to manage such new corporation, and sell the stock therein, and to exchange the stock of the Union Terminal Association for stock in the new corporation, and exercise all the powers granted over the new shares of stock in the new corporation; to hypothecate the shares of stock of the Union Terminal Association, or of the new corporation; to sell the stock of the Union Terminal Association, or of the new corporation, at not less than $100 a share, accounting for the proceeds, after deducting the proportionate share of all costs, expenses and compensation of the attorneys; no distribution need be made before and the stockholder agrees not to sell or dispose of his stock prior to the termination of the power of attorney; to receive all dividends and earnings on the stock of the Union Terminal Association, or of the new corporation, and disburse the same, or retain them until the termination of the power of attorney; to substitute new attorneys, with the same powers; to relinquish the powers granted and return the stock; to receive from attorneys previously appointed certificates of stock in the Union Terminal Association.

It appears by the answer that the Union Terminal Association was organized on the 6th day of July, 1898; that, by its certificate of incorporation, it was authorized:

*First.* To acquire and dispose of the stock, bonds, &c., of the Kansas City and Atlantic Railroad Company, of Missouri; the Terminal Improvement Association, of Kansas City, Missouri, and of the Missouri Agricultural and Fair Grounds Association, of Gallatin township, Missouri, corporations of Missouri, or of any other corporations of Missouri organized for similar purposes.

*Second.* To acquire and convey all properties and rights of the foregoing corporations.

*Third.* To buy, sell and deal in real estate; to promote agriculture and the improvement of stock; to reclaim land;

to promote, erect and construct dykes, breakwaters, canals and embankments for the reclaiming of land; to build, erect and construct wharves, docks and levees; to build, lease, erect and construct warehouses, grain elevators, storage-houses and other buildings; to promote, lease, erect and construct, maintain and operate toll bridges, railroad terminals, stations and depots for the reception and transmission of personal property; to convey and transport personal property on land or by water, or across rivers and other waters, by any mode of conveyance whatsoever, and to charge and receive compensation therefor.

*Fourth.* To issue bonds and secure them by mortgage.

It further appears by the answer that the authorized capital stock of the Union Terminal Association is $5,000,000, of which $1,962,900 has been issued and is outstanding, and that the same is held by about five hundred stockholders, and that the defendants are personally both large stockholders in said corporation, owning and holding several hundred shares of stock therein; that after said corporation was formed, and in order to carry out the purposes set forth in the certificate of incorporation, the directors proceeded to acquire, and have acquired, over ninety-six per cent. of the total issue of stock of the Kansas City and Atlantic Railroad Company, amounting to over $2,000,000 par value, and have every share of stock of the Terminal Improvement Association, of Kansas City, amounting to two thousand shares, of the par value of $200,000, and have a majority of all the stock of the Missouri Agricultural and Fair Grounds Association, of Gallatin township, Missouri, amounting to $48,000 par value out of a total capital stock of $90,000, and have also acquired all the issued and outstanding first mortgage bonds of the Kansas City and Atlantic Railroad Company, amounting to $600,000; that the underlying purpose of said corporation was the completion of a partially-constructed combination double-track, triple-deck railroad and highway bridge for railroad traffic and general business over the Missouri river, and in connection therewith the construction and operation of a grand union passenger station in the city of Kansas City, with the approaches, yards and accessories thereto, and that much has been done and valuable property acquired in furtherance of said purposes, all of which

possesses great prospective value, but that the project, as a whole, was incomplete and imperfect, and that the titles, rights and franchises obtained had not been perfected, and that, in order to be completed and become of financial value, much of what had been done had to be gone over—defects in title remedied, important legislation secured and actual construction carried on; and that, in order to properly develop the rights, privileges, franchises and property owned by the said several corporations, some plan must be adopted which would extend over a period sufficiently long to secure the desired results, and to that end all of the stockholders of the Union Terminal Association were advised that some agreement should be entered into which would provide for a union of interests and confer upon such individuals as they should select all the powers and privileges contained in the proxy and power of attorney, and should surrender their certificates of stock to said attorneys for the term therein named, in order that the interests should continue unchanged during the term within which it was confidently expected that the desired results might be accomplished, and the foregoing proxy and power of attorney was prepared, and, after careful examination and full discussion, was executed by about eighty per cent. both in number of stockholders and in shares of stock of the Union Terminal Association, and the certificates of stock delivered. The answer further sets forth that the action of the stockholders in thus conferring the rights, powers and privileges contained in the proxy and power of attorney has enabled the directors of the company to undertake and pursue a policy of development of the plans of the company and to obtain certain important action by which they have been able to secure very valuable rights and franchises, the removal of clouds upon the titles of land already acquired, and other valuable advantages for the said corporation, which has already greatly enhanced the value of the stock held by the several stockholders of the company, and which would have been impossible had not the right and power given under the proxy and power of attorney been irrevocably conferred.

The answer further sets forth that, in order to secure the said rights and property, a great deal of work was done by the defend-

ants and much money expended, and that the directors would not have expended the money nor the defendants devoted the time and labor to its accomplishment had it not been believed that the proxy and power of attorney was irrevocable; that much still remains to be accomplished to secure the results and value which the plan adopted contemplates; that the desired results can only be obtained through the continuance of said union of interests for the period named, within which it is confidently believed that the necessary work can be completed, and that the withdrawal by the complainant and other stockholders therefrom would not only cause the loss of much that has already been accomplished—the value of which depends on the completion of the general plan—but would also prevent further work in development thereof, and a loss of the great prospective value thereon; that amongst other powers given them by the proxy and power of attorney was the power of absolute disposal or exchange of said shares of stock in the said corporation, either for cash or for shares of stock in some corporation, and that, in pursuance of the powers thus given them, the defendants have entered into negotiations for the sale and have offered for sale, in one lot, the entire amount of stock so held and controlled by them under said proxy and power of attorney, and which negotiations are now pending, and which offers may be accepted at any time; that the complainant knew of the fact that the defendants had entered into negotiations for the purpose of disposing of the property of the Union Terminal Association, and had offered the same for sale, and had given options thereon; that the defendants have themselves loaned large sums of money and have secured other large sums of money, amounting to many thousands of dollars, which have been expended for the benefit of said corporation and its stockholders, on the faith of the representations and agreements entered into by the complainant and other stockholders.

This instrument which gave the defendants control over the complainant's stock appears to have been for a common interest; it is consistent with the purposes for which the corporation was created, and its continuance appears to be necessary for the ad-

vantage of all who are interested in the development of the property.

A power of attorney may become irrevocable whenever the object is to create an interest; and this is so even if it is not stated in the instrument itself to be irrevocable. While the general rule is that a principal may revoke the authority of his agent at his mere pleasure, an exception to this rule is when the principal has expressly stipulated that the authority shall be irrevocable and the agent has an interest in its execution. *Story Ag.* § *476.* But where an authority or power is coupled with an interest, or where it is given for a valuable consideration, or where it is part of a security, there, unless there is an expressed stipulation that it shall be revocable, it is, from its very nature and character, in contemplation of the law, irrevocable, whether it is expressed to be so upon the face of the instrument conferring the authority or not. *Story Ag.* § *477; Hunt* v. *Rousmaniner, 8 Wheat. 174; Durbrow* v. *Eppens, 36 Vr. 10.* In this last case illustrations of irrevocable power of attorney can be found.

We also agree with the learned vice-chancellor in the view that this instrument conferred upon the defendants powers to be executed as a trust for the benefit of all concerned, and conferred upon them a duty to account, as trustee, to all who joined in this power of attorney.

By "An act concerning corporations" (*P. L. of 1896 p. 282*) it is provided, in section 17:

"Absent stockholders may vote at all meetings by proxy, in writing; and every corporation may determine by its certificate of incorporation or by-laws the manner of calling and conducting all meetings, what number of shares shall entitle the stockholders to one or more votes, what number of stockholders shall attend, either in person or by proxy, or what number of shares or amount of interest shall be represented at any meeting in order to constitute a quorum."

This section applies to all stockholders' meetings, and has been held, in the absence of any provision in the certificate of incorporation or by-laws to the contrary, to secure to each shareholder one vote for each share of stock held by him and appearing by the books of the company to be in his ownership (*Cam-*

*den and Atlantic Railroad Co.* v. *Elkins, 10 Stew. Eq. 273*), but the certificate of incorporation or by-laws may make different provisions. *Loewenthal* v. *Rubber Reclaiming Co., 7 Dick. Ch. Rep. 440.* There does not appear, however, to be anything in the certificate or by-laws varying the statutory provision.

It is further provided in section 36 of the Corporation act:

"Unless otherwise provided in the charter, certificate or by-laws of the corporation, at every election each stockholder, whether resident or non-resident, shall be entitled to one vote in person or by proxy for each share of the capital stock held by him, but no proxy shall be voted on after three years from its date."

This section applies only to voting at elections. Both of these sections seem to have been enacted for the convenience of stockholders who, for any reason, do not attend stockholders' meetings, and provides a method by which their wishes, as set forth in the proxy, may be given expression in their absence, and there is nothing in either of the sections which prevents a stockholder who has given a proxy from exercising his right to vote in person, if present, at any meeting at which a vote of the stockholders is taken.

The only limitation as to time for which such proxies may continue is in the thirty-sixth section, which prevents the use of a proxy for voting at elections after three years from its date.

There is nothing in either of the sections which prevents a stockholder from appointing an attorney to vote his stock for him at any stockholders' meeting for any time he may choose, save only meetings for elections above the time limit of three years.

They do not, in terms, prevent a stockholder from giving an irrevocable power of attorney to vote at stockholders' meetings, subject to the time limit as to elections, nor can we see any reason why a stockholder may not give such a proxy if he chooses, and be bound by it; he can easily avoid the effect of it by appearing and voting in person at all meetings.

There is no statutory provision, nor can we perceive any reason offensive to public policy, preventing a stockholder from

giving another powers over, or rights in, his shares in a corporation to the same extent that he might give in any property.

We recognize the principle laid down in *Cone* v. *Russell, 3 Dick. Ch. Rep. 208,* and *White* v. *Thomas Tire Co., 7 Dick. Ch. Rep. 179,* that every stockholder is entitled to the benefit of the judgment of every other stockholder in the management of the affairs of the corporation, but in this case complaint is not made by one claiming that injury has been done to his interest by reason of a stockholder divesting himself of control of his stock, but by one of the very parties who has entered into this agreement and to which his consent has been given. He cannot complain of the injury done to his interests by this action, for he is a consenting party. Such arrangements, with regard to the control of stock, as contemplated in this proxy and power of attorney, and which have been denominated pooling agreements, are not necessarily void as being against public policy. In the case of *Cone* v. *Russell, supra,* the court, while holding the agreement in that case void as against public policy, expressly holds that "this conclusion does not reach so far as to necessarily forbid all pooling or combining of stock, where the object is to carry out a particular policy, with a view to promote the best interest of all the stockholders. The propriety of the object validates the means, and must affirmatively appear."

The following are cases in which pooling agreements have been held valid: *Brown* v. *Pacific Mail and Steamship Co., 5 Blatchf. 525; Smith* v. *San Francisco, &c., Railroad Co., 115 Cal. 584; S. C., 35 L. R. App. Cas. 309; Mobile and Ohio Railroad Co.* v. *Nicholas, 98 Ala. 92; Hey* v. *Dolphin, 92 Hun 230.*

No illegal purpose is manifest upon the face of this agreement, nor has any been alleged in the bill. It appears to be consistent with the purposes for which the company was created, and which continuance appears to be necessary for the advantage of all who are interested in the development of the property; it is expressly declared to be for the benefit of all who join in it. No stockholder is prevented from joining in this agreement, and no stockholder who has not availed himself of the opportunity to join in it is excluded from the benefit of it; no one appears to have been injured by it. The complainant

does not allege in what way he is damaged by its continuance; he, with about four hundred out of five hundred stockholders, executed it, and he alone of all the stockholders asks to have it revoked. We do not think he should be allowed to revoke it.

The decree should be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, VAN SYCKEL, DIXON, COLLINS, FORT, GARRETSON, HENDRICKSON, BOGERT, ADAMS, VREDENBURGH, VOORHEES—11.

*For reversal*—None.