JOHN W. WHITE, AND OTHERS, Appellants, v. NA-
THAN E. SNELL AND OTHERS, Respondents.

No. 1980.    Decided March 15, 1909 (100 Pac. 927).

1. CONTRACTS—CONTROL OF CORPORATION—VOTING TRUST—VALIDITY.
Comp. Laws 1907, section 335, permits a stockholder to vote
by agent or proxy, unless otherwise provided in the articles
of incorporation. Section 330 declares that the stock of a cor-
poration shall be deemed personal property. Stockholders own-
ing a majority of the stock, contracted with other stockholders,
who were then directors of the corporation, reciting that they
desired to place the control of such stock in the hands of the
latter stockholders, and authorized them to vote such stock, to
collect all dividends, and to do all things that the owners of
such stock might do as such. It was agreed that, in considera-
tion thereof, the stockholders to whom such control was trans-
ferred should pay the owners a fixed sum per month and all
assessments against the stock, that such stockholders would
not vote it in favor of any assessment thereon or to incur any
indebtedness on the part of the corporation not payable before
expiration of the contract, and that they would pay the propor-
tion represented by such stock of any indebtedness of the cor-
poration created during the period of the contract. *Held,* that
as between the parties to the contract, and in the absence of an
express statute forbidding it, the contract was not void as
against public policy.    (Page 438.)

2. CONTRACTS—MISTAKE—BURDEN NOT ANTICIPATED. Where parties
in entering into a contract stand upon an equality with respect
to each other and the subject-matter of the contract, a court
ought not to interfere merely because one party or the other
must assume or discharge a burden not anticipated when the
contract was made, provided such burden comes within its
terms.    (Page 442.)

APPEAL from the Fourth District Court, Utah County.—
*Hon. J. E. Booth,* Judge.

Action for breach of contract. From a judgment entered
in their favor, the plaintiffs appealed.

REVERSED.

*Messrs. Corfman & Rydalch* for appellants.

*J. W. Whitecotton* and *A. B. Morgan* for respondents.

FRICK, J.

This is an action for a breach of contract. On the 1st day of August, 1904, John W. White, Francis White, George White, and Frank Rouse, appellants, entered into a certain contract with Nathan E. Snell, William Finch, David Morgan, and P. Okelberry. P. Okelberry subsequently died, and William P. Okelberry is made a party as administrator of the estate of P. Okelberry. For convenience we shall treat William P. Okelberry as a party to the contract, and shall designate the defendants as respondents. The material parts of the contract, in substance, are: That appellants on said 1st day of August, 1904, were the owners of ninety-three shares of the capital stock in the Goshen Mill & Elevator Company, a Utah corporation organized with a capital stock of $15,000 divided into one hundred and fifty shares of $100 each. It is recited in the contract that the appellants were desirous of placing the management and control of said ninety-three shares of stock into the hands of respondents, and that the respondents (who at that time were directors of the corporation aforesaid) were desirous of assuming the control thereof; that appellants in said agreement constituted and appointed respondents as attorneys in fact to vote said ninety-three shares of stock at all corporate meetings, and authorized them to collect all dividends that might be declared thereon and to apply the same to their own use and benefit, and, in short, authorized respondents to do all things that the appellants might lawfully do as owners of said stock. The contract was to be in force from the 1st day of August, 1904, until the 1st day of January, 1907. The appellants reserved the right to sell said stock as the owners thereof at any time, subject, however, to the rights of respondents as stated above for the time aforesaid. The respondents were also prohibited from pledging or other-

'wise disposing of said stock. In consideration of being given the full control of said stock and the right to all of the dividends that might be earned thereby during the time aforesaid, respondents agreed to pay appellants the sum of $25 per month, and, in addition thereto, agreed to pay all assessments that might be levied and assessed against said stock during said time, and further agreed "that they [respondents] will not vote said stock in favor of levying any assessments thereon, or for the incurring of any indebtedness on the part of said corporation which shall not be due and payable before the expiration of the period above set forth, and that they will pay the proportion represented by said ninety-three shares of stock of any and all indebtedness of said corporation which may be created or incurred during the period mentioned in this agreement." It was also alleged in the complaint that, pursuant to the agreement aforesaid, the respondents assumed and exercised the control and voting power of said stock, and continued to do so until the 30th day of December, 1905, when both parties, by mutual consent, were relieved from the performance of the provisions of said contract; that between the 1st day of August, 1904, and the 30th day of December, 1905, while said respondents were in full control and management of said stock, and while they were the directors of and had the control and management of the affairs of said corporation, an indebtedness was created and incurred by said corporation amounting to $8,803.35; that a judgment for said amount was obtained by the creditor to whom such sum was owing against said corporation on which an execution was duly issued and levied upon the property of said corporation, and the same was sold and the proceeds thereof applied in payment of said judgment; that, by reason of the sale of the property of said corporation, the stock of appellants has become valueless; that the amount of said indebtedness that appellants were required to pay under the provisions of said agreement as the proportion of said ninety-three shares of stock is the sum of $5,457.24; that, in addition

to said sum, said respondents refused and neglected to pay the sum of $425 as rental due on said stock; that a demand was duly made upon respondents by appellants to pay the amounts aforesaid, but that respondents refuse to pay the same or any part thereof. Wherefore appellants prayed judgment for the sum of $5,732.24 against said respondents. Respondents filed their joint answer, in which they admitted the execution of said contract, and practically admitted all the allegations aforesaid, except that they were indebted to the appellants in the amount aforesaid, or in any amount; admitted that they had not paid the amount due as rental of said stock, except the sum of $150 which they averred they had paid. They further, in substance, averred that the indebtedness mentioned in the complaint was incurred in the conduct of the business of said corporation; that respondents, as directors thereof, and while acting as such, in incurring whatever indebtedness was incurred, acted in good faith and without profit to themselves, and that they derived no profits or benefits from said business or said stock; and further averred that said contract was against public policy and for that reason void. When the case came on for trial, respondents consented in open court that a judgment be entered against them for the sum of $275 as part of the rental remaining due on said stock, and objected to the introduction of any evidence in support of the allegations of the complaint, upon the ground that the contract upon which the allegations of the complaint were based was against public policy and void, and hence not enforceable. The court sustained the objection and entered judgment for said sum of $275 against respondents and in favor of appellants, and also entered judgment for costs against appellants. Appellants refused their consent to such entry, and now appeal from the whole judgment.

The principal error assigned is that the court erred in holding that the provisions of said contract are void and unenforceable. In support of the ruling of the court, counsel for respondents, as we understand them, insist: (1) That, by

the terms of the contract, the majority stockholders virtually
attempted to or did dispose of the corporate property; and
(2) that the provisions of the contract contravene public
policy, and are therefore void.  While the provisions of the
contract may be said to be unusual if not unique, we never-
theless can see nothing in any of its provisions by which the
stockholders either attempted to or did dispose of the assets
of the corporation or any of them.  Nor are we able
to assent to the conclusion reached by the trial court
that the contract upon its face is contrary to public
policy or void.  The reasons for this conclusion, however,
blend and overlap one another so that we will not attempt
to consider the propositions separately.  In one sense we
think that no more was attempted or done by appellants
than to execute a special proxy by which respondents were
permitted to vote appellants' stock at all corporate meetings,
and, by reason of this privilege, were given both the power
and the right to determine the business policy of the corpo-
ration for the time mentioned in the contract.  By section
335, Comp. Laws 1907, it is expressly provided that, unless
the right to vote by proxy is restricted in the articles of
incorporation, each stockholder may vote his stock by an
agent or proxy.  In section 330 the capital stock of all cor-
porations is declared to be personal property, and, as such,
no doubt, may be sold, pledged, leased, or disposed of as any
other personal property, subject, however, to the rights of
the corporation or others who may have some special interest
in the same.  Neither do we see any good reason, and none is
suggested, why a stockholder may not in advance dispose of
any dividend to which he may become entitled, and that he
may do so for a consideration which is satisfactory to him-
self and to the person who obtains the right to draw such
dividend.  As between the parties to such an agreement, in
the absence of an express statute to the contrary, we can
conceive of no good reason, either in law or equity, why
such an agreement is not binding and enforceable.  We are
aware of no decision by any court which has held that, in

the absence of an express statute forbidding it, the voting power of the stock may not be vested in one person while the ownership thereof is in another. There are decisions, however, which hold that this may be done. (10 Cyc. 341, 342, and cases' there cited.) As we have seen, our statute expressly authorizes any stockholder to vote his stock by an agent or proxy. If this is permitted, why may not several stockholders, or any number, agree for a consideration to permit other persons to vote the stock in their stead? And, if the stockholders entering into such an agreement hold the majority of the stock, why may they not agree that the persons in whom the voting of the stock is vested may also determine the business policy of the corporation, and may receive any profits in the form of dividends that may be derived from the corporate business? It is elementary that the stockholders who own the majority of the stock may elect themselves directors, or appoint themselves as agents of the corporation, may determine upon and carry into effect certain policies, and, in short, may conduct the corporate business in the same manner as they would conduct their own. And so long as they act honestly, and are not devoting the corporate assets or business to their own private gain, or to the prejudice of other stockholders, no one can question their acts, which are purely *intra vires*. (3 Clark & Mar., Priv. Corp., p. 1909; 2 Cook on Corp. (6th Ed.), sec. 684.) If the majority of the stockholders may thus directly determine the policy of the corporation, and may elect all the officers, and may have the officers of their choice, appoint all the agents of the corporation, and through them effectuate the policies determined upon, why may they not permit certain persons to vote the stock as the majority may lawfully do, and in so doing permit such persons to do in the premises what the owners of the stock might lawfully do?

True it is, that in some states combinations of this character are prohibited by statute; but we have no such statute in this state. It is equally true that, where such a combination is formed for the purpose of exploiting the business

of the corporation to the prejudice of the minority stockholders, and for the benefit merely of the persons who, for the time being, may have control of the corporate affairs, or if the combination is formed for the purpose of limiting the products of the corporation so as to be in restraint of trade, it might be held to be against public policy, and for that reason void. But there is no such a claim made here. Indeed, the respondents themselves assert that what they did under the agreement was done in good faith, and that they injured or defrauded no one. Nor is there any stockholder here complaining. The contract on its face seems to guard the interests of all the stockholders by requiring the respondents to pay the debts of their own creation, and not to levy any assessments against the stock, unless they are willing to pay their proportion thereof. It is asserted, however, that this provision in the contract is of no effect because it only prevents the stock from being voted in favor of assessments, and the stockholders have not the power to vote the stock either for or against assessments, since that is a corporate function that must be executed, if executed at all, by the directors, who alone are authorized to execute corporate functions. Under certain conditions this may be true, and yet it may not affect this provision in the contract so far as is made to appear by this record. By the statute (section 355) it is expressly provided that no assessments may be levied against the full-paid capital stock of any corporation unless the right to do so is provided for in the articles or agreement of incorporation, and, further, that the assessments may be levied only upon the conditions and to the extent and in the manner provided for in such articles. It may be, therefore, that some provision is made in the articles with regard to levying assessments, and that they should be levied only when expressly authorized by the stockholders. The articles are not in the record, and it is not made to appear what the conditions, if any, in this respect are. But, assuming that the directors alone could levy an assessment, then again, as we have seen, respondents at the time the agreement was

entered into were directors of the corporation, and they expressly aver in their answer that what they did with regard to the corporate affairs between August 1st, 1904, and December 30th, 1905 (during the time the agreement was in force), they did as directors of the corporation. If their term of office expired during the interim, they must have re-elected themselves, as they might lawfully do. While they thus could not directly vote the stock in favor of an assessment as stockholders, they might indirectly do so as directors. We are of the opinion that the spirit, if not the letter, of the agreement, provided against either or both contingencies, and that this was contemplated by both parties.

But, beyond all this, the agreement was fully executed when this action was commenced. No fraud, misrepresentation, or concealment of any kind or character is alleged, nor can we conceive how respondents could have been misled in any way by appellants. Respondents, as directors of the corporation, were in charge of its business affairs when the agreement was entered into, and must be deemed to have known the condition of the corporation's affairs, and, in a measure at least, the future prospects or possibilities of the corporate business. With this knowledge the respondents entered into the agreement with a view, no doubt, of so controlling and conducting the corporate business as to make it profitable to all the stockholders, including themselves. In order to maintain this control, they arranged for the right to vote and control appellants' stock, who were the owners of sufficient to entitle respondents to such control, and for this right respondents agreed to perform the conditions mentioned in the agreement. This agreement does not contain any conditions for which voting pools and other combinations with respect to voting the corporate stock have been held void in the courts. (2 Cook on Corps. (6th Ed.), secs. 622, 622a; 10 Cyc. 341, 342.)

To what extent and under what circumstances a court might interfere in a case where the minority stockholders are in court to prevent the execution of a pooling contract we need not now determine. All that it is necessary to decide

is that there is nothing upon the face of this contract, nor is there anything pleaded, for which we can hold the contract void. The fundamental principles of the law are all in favor of the right to enter into any lawful contract upon such terms and conditions as to the parties thereto may seem proper. With this privilege courts have no right to interfere unless fraud, coercion, or duress in some form is practiced and alleged, or where the contract is forbidden by some statute, or is contrary to good morals or public policy. In cases where one of the parties to the contract alone determines what its provisions shall be, and where the other party thereto must either accede to its terms or suffer some inconvenience or hardship, the courts sometimes do, and perhaps more often should, refuse to enforce one-sided and harsh stipulations against the party who was compelled to yield to the onerous provisions contained in such a contract. But where the parties in entering into a contract stand upon an equality with respect to each other and with regard to the subject-matter of the contract, courts ought **2** not to interfere merely because one side or the other must assume or discharge a burden which was not anticipated when the contract was entered into, provided such a burden comes within the terms of the contract. If the business of the corporation had been profitable during the duration of the agreement in question, respondents no doubt would insist upon the terms of the agreement, and their right to have them enforced could not well be questioned so long as all the stockholders received the proportional benefits to which they were entitled. The mere fact that the enterprise resulted in a loss is no reason why a court should interfere.

The contract in our opinion is not vulnerable to the objections urged against it. The judgment is therefore reversed, and the cause remanded, with directions to the district court to grant a new trial, and to proceed with the case in accordance with the views herein expressed. Appellants to recover costs.

STRAUP, C. J., and McCARTY, J., concur.