## In re C. W. BARTLESON CO.

(District Court, S. D. Florida. December, 1920.)

1. **Bankruptcy ⬅57—Conveyance not made to hinder or delay creditors not "act of bankruptcy."**

A conveyance of real estate by a corporation within four months before the filing of an involuntary petition in bankruptcy against it does not constitute an act of bankruptcy within the Bankruptcy Act, though it hinders and delays creditors in the collection of their claims, where the evidence shows no fraudulent design to do so, but that the conveyance was made to secure past indebtedness and to obtain future advances.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

2. **Bankruptcy ⬅57—Prior conveyance by bankrupt solvent at date of filing petition not "act of bankruptcy."**

Where a bankrupt at the date of filing an involuntary petition against it was solvent, a conveyance by it within four months before the filing of such petition did not constitute an act of bankruptcy within the Bankruptcy Act.

3. **Corporations ⬅198—A creditors' agreement reciting a prior voting trust agreement held effective, whether actually signed and executed by a committee of creditors and the corporation or not.**

Where a committee of creditors of a corporation, who were elected directors thereof and conducted the business in the name of the corporation, and to whom was assigned the majority of the stock for purposes set out in a voting trust agreement, sent to other creditors of the corporation for their signature a creditors' agreement reciting the voting trust agreement and purporting to be signed by them and executed by the corporation, such agreement became effective so far as the corporation, committee, and such creditors as signed it were concerned, whether it had been actually signed and executed or not; such acts being an adoption of such purported signatures.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**4. Bankruptcy ⊂⇒60—Creditors' agreement held not general "assignment for benefit of creditors" within Bankruptcy Act.**

Though a majority of the stock of a corporation was transferred to a committee of creditors for purposes set out in a voting trust agreement under which such committee was put in virtual charge of the corporation, a creditor's agreement prepared by it and sent to other creditors for their signature, though effective as between themselves, the corporation, and all other creditors signing it, did not constitute a general assignment for the benefit of creditors so as to constitute an act of bankruptcy within the Bankruptcy Act.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Assignment for Benefit of Creditors.]

In Bankruptcy. Involuntary petition against the C. W. Bartleson Company. Dismissed.

See, also, 243 Fed. 1001; 253 Fed. 296.

Haley & Heintz, Cooper, Cooper & Osborne, McNeill & Strum, and George C. Bedell, all of Jacksonville, Fla., for creditors.

Fleming & Fleming and George M. Powell, all of Jacksonville, Fla., for respondents.

CALL, District Judge. March 3, 1916, an involuntary petition in bankruptcy was filed against the C. W. Bartleson Company. April 13th an amended petition was filed, alleging some ten acts of bankruptcy. After the taking of testimony began an amendment was made, amending certain acts of bankruptcy alleged in the amended petition and adding another act. Other creditors intervened in the proceeding. Such action was had in the proceeding that answers to the amended petition and intervening petitions were filed April 11, 1917. Answer to the amendment to the amended petition was filed September 7, 1918. These answers put in issue each of the acts of bankruptcy alleged. Proofs were taken and the case brought on for final hearing. At such final hearing all of the acts of bankruptcy alleged were abandoned except the following: (7a) That the bankrupt within 4 months before the filing of the original petition, on the 17th day of February, 1916, transferred and concealed certain real estate of the value of $9,000 to the Atlantic Company, not a creditor of the bankrupt, without consideration, and with intent to hinder, delay, and defraud the creditors of the bankrupt.

In the proofs there is no contention but that the real estate was conveyed to the Atlantic Company, nor is it contended that the Atlantic Company was a creditor of the bankrupt, nor is there any contention that the Atlantic Company paid a consideration for said property conveyed. The conveyance purported to convey a fee-simple title. At the time of such conveyance the bankrupt was undoubtedly embarrassed for funds to properly conduct its business. The bankrupt at the hearing produced a declaration of trust executed by the Atlantic Company, and concurred in by the bankrupt in favor of three Jacksonville banks to secure indebtedness from the bankrupt to the banks and future advances. This declaration of trust was not recorded along with the deed.

[1] Under this state of facts is the act of bankruptcy alleged proven? I think not. There were no facts in evidence showing a fraudulent design on the part of the bankrupt to hinder or delay its creditors in the collection of their claims, but the evidence does show that the conveyance was made for the purpose of securing past indebtedness and with the view of obtaining future advances. While the effect of this may and probably does hinder and delay creditors in the collection of their claims as incidental to the security given, yet it does not constitute the act of bankruptcy denounced by the Bankruptcy Act (Comp. St. §§ 9585–9656).

[2] In addition to this, the testimony shows the solvency of the bankrupt at the date of filing the involuntary petition, which would be a sufficient answer to this act of bankruptcy.

[3] The next acts of bankruptcy relied upon are those set forth in the eighth and ninth acts in the amended petition. These are that the bankrupt on the 29th of February, 1916, made a general assignment for the benefit of its creditors and delivered all its assets to five persons, as a creditors' committee, to be administered for the benefit of its creditors. These are the acts most strenuously insisted upon for the petitioners.

A synopsis of the material facts appearing from the testimony may be stated as follows: In February, 1916, the bankrupt, finding itself embarassed for funds to meet its current bills as they matured, called a meeting of its creditors at its place of business, at which a statement of its assets and liabilities was exhibited and a plan was developed to continue the business, a committee of five being selected for that purpose. Eleven hundred and twenty shares of the capital stock of the corporation out of a total of 1,250 shares were transferred to the five persons, and these five persons were, at a stockholders' meeting, elected directors of the corporation and conducted the business in the name of the corporation, buying and selling goods, etc., in the usual course of business. A voting trust agreement was entered into between the original holders of said stock and the five persons named at the creditors' meeting, dated February 29th, to continue for five years unless sooner terminated by one of four ways set out in the trust agreement. Spaces were provided for the signatures of the five persons selected as a creditors' committee, but do not appear to have been signed. A so-called creditors' agreement was sent out to the creditors of the company reciting the voting trust agreement, and purporting to be between C. W. Bartleson Company, of the first part, the five persons named as a creditor's committee of the second part, and such persons holding claims against the company as may make themselves parties of the third part. This paper sent to the creditors purports to be signed by the five persons chosen by the creditors' meeting as such creditors' committee, and C. W. Bartleson Co., by C. W. Bartleson, its president, and attested by C. W. Smith, secretary, with "corporate seal" in brackets above the name, then a space for the signature of the creditor. The paper provided that the agreement should become binding and effec-

tive when, in the discretion of the committee, a sufficient number of creditors in amount or number should execute the agreement.

It is contended for the bankrupt:

First, that this agreement never became effective because never executed by the corporation.

As to this contention it seems to me only necessary to point out that the committee, who constituted the board of directors and who had had assigned to them 1,120 shares out of 1,250 shares of the capital stock of the corporation, and were then, through the vice president, actively in charge of the affairs of the corporation, sent to various creditors in order that the creditor might make himself a party, this paper purporting to be signed by themselves and executed by the corporation.

Such acts were an adoption of such signatures, and it becomes of little moment whether the papers prepared for signature and execution had been actually signed and executed. I find that the creditors' agreement did become effective so far as the corporation, committee, and such creditors as signed same were concerned. The action of the committee under the agreement, it seems to me, was an exercise of the discretion vested in them by the second clause of the agreement.

[4] Second, that if said agreement became effective, still it did not constitute a general assignment for the benefit of the creditors.

There can be no question under the testimony in this case but that it was contemplated by all the parties concerned that the corporate entity should be maintained throughout; that the business of the corporation should be and was carried out in the usual and ordinary way under the corporate name by corporate officers, selected, it is true, by the committee appointed at the creditors' meeting. There was no transfer of the corporate assets to the committee. It is true that the stock of the corporation was transferred to them for the purposes set out in the voting trust agreement, and, if this can be said to be a transfer of the assets of the corporation, then, and only then, could it be said that a general assignment for the benefit of the creditors had been made. As was said in one case, this action of transferring the stock and thus putting their committee in virtual charge of the corporation might be tantamount to transferring the assets, but would not constitute a general assignment for the benefit of creditors as provided in the Bankruptcy Act.

I am constrained, therefore, to find against the petitioning creditors on this act of bankruptcy.

What I have said disposes also of the ninth act of bankruptcy alleged in the amended petition.

A decree will be prepared dismissing the involuntary petition in bankruptcy, the amendments thereto, and the intervening petitions at the cost of the petitioners.