## MACKIN et al. v. NICOLLET HOTEL, Inc., et al.

Circuit Court of Appeals, Eighth Circuit.
April 16, 1928.

No. 7661.

1. **Corporations** ⟨⟩192—That state recently passed law authorizing corporate voting trust agreements does not justify holding that previously such agreements were illegal in such state.

That state in which corporation was incorporated has recently passed law authorizing voting trust agreements does not justify holding that previous to such law it must be accepted as an established rule of that state that they were theretofore illegal, since legislation must be considered as addressed to future and not to past.

2. **Corporations** ⟨⟩198—Voting trust agreement held not to violate state statute relating to stockholders' voting stock by proxy, in view of by-laws (Gen. St. Minn. 1923, § 7461).

Voting trust agreement by common stockholders of Delaware corporation doing business in Minnesota held not to violate Gen. St. Minn. 1923, § 7461, providing that, unless otherwise provided in certificate or by-laws, every stockholder shall be entitled to one vote in person or by proxy for each share or other lawful unit of representation held by him, where by-laws of corporation provided that at each meeting of stockholders every stockholder having right to vote shall be entitled to vote in person or by proxy appointed by an instrument in writing, subscribed by such stockholder, and bearing a date not more than three years prior to meeting, unless instrument provides for longer period.

3. **Corporations** ⟨⟩198—Common stock voting trust agreement, where bond and preferred stockholders invested in reliance on same, held valid.

Voting trust agreement by common stockholders of hotel corporation held valid, where bonds and preferred stock were sold to public in reliance upon such agreement, and where voting power of trustees was coupled with an interest and there was a consideration.

4. **Corporations** ⟨⟩198—Parties purchasing trust certificates after creation of common stock voting trust agreement cannot question legality of voting trust.

Parties purchasing trust certificates after creation of common stock voting trust agreement cannot question legality of voting trust; their equities being inferior to innocent purchasers of preferred stock and bonds, whose purchases were made because of agreement.

Appeal from the District Court of the United States for the District of Minnesota; John B. Sanborn, Judge.

Suit by Daniel Mackin against the Nicollet Hotel, Incorporated, and others, in which Austin A. Cooper intervened. From a decree dismissing the bill (10 F.[2d] 375), plaintiff and intervener appeal. Affirmed.

Hubert M. Harvey, of St. Paul, Minn. (M. H. Boutelle, of Minneapolis, Minn., on the brief), for appellants.

J. B. Faegre, of Minneapolis, Minn. (Cobb, Wheelwright, Hoke & Benson, of Minneapolis, Minn., on the brief), for appellees.

Before LEWIS and KENYON, Circuit Judges, and KENNEDY, District Judge.

KENNEDY, District Judge. This is a suit in equity, instituted in the court below, wherein Daniel Mackin was plaintiff and one Cooper was an intervening plaintiff, in which the principal relief sought was to secure a decree setting aside and declaring to be void and of no force and effect a voting trust agreement incident to the financing, erection, ownership, management, and control of a hotel property in the city of Minneapolis by the defendant corporation through the individual defendants, by virtue of the exercise of their powers under such trust agreement.

At the conclusion of the final hearing in the court below, the court found generally for the defendants, appellees here, dismissed the bill of complaint with prejudice at the cost of plaintiff and the intervener, and plaintiffs bring the cause here by appeal.

The trial judge filed a written memorandum in which is embodied what purports to be a statement of the facts, followed by a brief analysis of the issues. As this statement is adopted by the appellees and is not challenged by the appellants, it is safe to accept it as a proper basis for the disposition of the matters presented upon the appeal. It is as follows:

"The defendant Glen S. Dixson was the owner of a leasehold interest in a tract of land in the city of Minneapolis, Minn., upon which stood what was known as the old Nicollet Hotel. The Nicollet Hotel, Incorporated, a Delaware corporation, was organized at the instance of a group of men interested in the commercial welfare of Minneapolis, for the purpose of adding to the hotel accommodations of that city. Arrangements were made to have Dixson take 2,500 shares of common stock for his lease and to erect a new Nicollet Hotel upon this property. The cost of the hotel was to be about $3,000,000, to be raised by the sale of $1,800,000 of first mortgage bonds and $1,250,000 of preferred stock. On February 6, 1923, the Minnesota Loan & Trust Company, the Minneapolis Trust Company, and the Wells-Dickey Trust Company, all of Minneapolis, accepted the application of the Nicollet Hotel, Incorporated, for a loan of $1,800,000, to be secured by first mortgage bonds and a trust deed covering the hotel property. In the application for the loan, the following statement was made:

"'The borrower agrees that a voting trust agreement covering all of the common stock of the borrower will be executed in the form and on the terms and conditions satisfactory to you, and your acceptance of this application is conditional upon the execution of such agreement.'

"On February 8, 1923, application to the State Securities Commission of Minnesota for a license to sell its preferred stock was made by the corporation, which application contained the following language:

"'The common stock of the corporation is to be trusted with three trustees for a period of ten years for the protection of the preferred stockholders'—and further recited that the preferred stock is ' * * * fully safeguarded through the immediate deposit of all common stock under a ten-year voting trust.'

"On February 15, 1923, the commission issued a license to the corporation to sell its preferred stock, subject to the condition that the common stock be trusteed.

"On March 3, 1923, a voting trust agreement was made with A. E. Zonne, Glen S. Dixson, and Joseph Chapman, as voting trustees, which contained the following recitals:

"'Whereas, the said corporation desires to erect upon the said premises hereinbefore described a new hotel building and is in need of funds for such purpose, and for the purpose of raising part of the necessary funds to build and equip said hotel building, proposes to issue and sell bonds in the amount of one million eight hundred thousand dollars ($1,800,000) secured by mortgage or trust deed on the property of said first party, and also to sell one million two hundred fifty thousand dollars ($1,250,000) par value of its preferred capital stock; and

"'Whereas, for the purpose of inducing third parties to subscribe for and purchase the preferred capital stock of said corporation, and to purchase such bonds, the undersigned stockholders have offered to transfer their shares of common stock in said corporation to said parties of the second part as voting trustees under the terms hereinafter set forth.'

"The consideration for the voting trust is stated in the instrument as follows:

"'In consideration of the premises, and the benefits to be derived by the undersigned stockholders in said corporation from the purchase by third persons of the preferred

stock of said corporation and of said bonds of said corporation. * * *'

"The voting trust agreement provided that the common stock should be assigned to Zonne, Dixson, and Chapman as trustees; that they should issue trustees' certificates therefor, which might be sold on condition that the purchasers or assignees accepted the provisions of the voting trust. It also provided, among other things, that, should a vacancy occur in the office of the first trustee, it should be filled by a selection, made by a majority of the three trust companies which underwrote the bond issue, from the board of directors of the Nicollet Hotel, Incorporated, or, if none were willing to act, then from the residents of the city of Minneapolis; that, if a vacancy should occur in the office of the second trustee, it should be filled by a trustee selected by the holders of the voting trust certificates representing a majority of the common stock; and that, in case of a vacancy in the office of the third trustee, it should be filled by the Minnesota Loan & Trust Company, trustee for the bondholders, from the present board of directors, or, if none should be willing to act, then from the residents of the city of Minneapolis.

"It was also provided that a majority of the holders of the preferred stock of the Nicollet Hotel, Incorporated, might remove the first trustee and appoint a new trustee, but that such trustee must be selected from the present board of directors, but, if none residing in Hennepin county were willing to act, from the residents of the city of Minneapolis, that the Minnesota Loan & Trust Company, trustee for the bondholders, might remove the second trustee and appoint a new trustee, from the present board of directors, or, if none were willing to act, then from the residents of Minneapolis, and that the holders of voting trust certificates representing a majority of the common stock might remove the second trustee and appoint a new trustee in his place.

"Under the trust agreement, the trust shall continue for ten years or until all outstanding preferred stock shall be retired, and, if it shall not be retired before the expiration of ten years, then the trust shall be continued in two-year periods for an additional term of ten years; provided that any holder of a trust certificate may, upon notice before the end of the ten-year period, or before the end of any two-year period, withdraw his shares of common stock at the end of the period in which such notice shall have been given, and provided further that the holders of trust certificates representing one-half of the common stock may, upon notice, cause the expi-

25 F.(2d)—50

ration of the trust at the end of the ten-year or any two-year period.

"The trustees are required to select themselves as directors and to re-elect the present board of directors so long as the trustees or a majority of them believe them to be suitable.

"Mr. Dixson executed the trust agreement on March 3, 1923, and deposited his 2,500 shares of common stock. Shortly thereafter Haglin & Sons Company and Holabird & Roach, the other common stockholders, likewise executed the agreement and deposited the 1,600 shares and 400 shares which they owned. That constituted all the common stock of the corporation. The $1,250,000 of preferred stock was sold and is outstanding. In July, 1923, the trust deed to the Minnesota Loan & Trust Company of Minneapolis, securing the $1,800,000 of bonds, was delivered and the money paid to the corporation. All the bonds are issued and outstanding.

"Article IV of the trust deed is as follows:

" 'The holders of the common stock of the company have heretofore entered into a voting trust agreement, dated the third day of March, 1923, with A. E. Zonne, Glen S. Dixson and Joseph Chapman, as voting trustees, and the company covenants and agrees that it will cause said voting trust agreement to be fully carried out and performed, in accordance with the terms thereof and will cause the same to remain in full force and effect until all of the bonds secured hereby have been paid.'

"It is provided that, if default shall be made in any covenant or condition of the trust deed, or if a receiver shall be appointed for the corporation, the deed may be foreclosed.

"The hotel was built with the funds procured from the sale of these bonds and preferred stock, and has been operated under the direction of a board of directors elected by the voting trustees, pursuant to the trust agreement.

"The plaintiff, Mackin, and Cooper, the intervener, are the owners of trust certificates representing 80 shares and 1,520 shares, respectively, of the common stock held by the defendant trustees. Their claim is that the voting trust is void, that the trustees and those appointed by them have mismanaged the company and have caused large losses; that, in the event of a stockholders' meeting, the trustees will vote the common stock; and that the plaintiff has been denied the right to inspect the books. To put it briefly, they say that they are denied their rights as com-

mon stockholders, because of this trust agreement, that they do not approve of the management, and they ask this court to declare the agreement void and to appoint a receiver until they and the rest of the beneficial owners of the common stock can organize and elect a board of directors of their own to take over and manage the hotel property."

While points other than the validity of the trust agreement were raised upon the hearing by defendants and are reiterated here, the court below decided the case upon the merits as to the principal issue, which issue is accepted and defined by counsel for appellants on page 1 of their brief in the following language:

"The action involves only one issue; namely, the validity of a voting trust executed on the 3d day of March, 1923, whereby the stockholders of the no par value common stock of the Nicollet Hotel, Incorporated, a corporation created and existing under the laws of the state of Delaware, agreed that· said stock should be voted by three designated trustees for at least a period of ten years."

We shall first direct our effort to ascertaining whether or not the ruling and decision of the trial court upon this principal issue was correct.

[1] In the first instance, it is to be noted that the defendant corporation is one organized and existing under and by virtue of the laws of the state of Delaware, while its principal business is conducted and the transactions herein challenged took place in the state of Minnesota. The question as to whether the transaction should be ruled by the laws of Delaware or by the laws of Minnesota might be of importance if it were disclosed that either state at the time of the commencement of the action had any statute upon the subject of voting trust agreements in corporate management. Counsel seem to be in agreement, however, that no statute of this nature is to be found among the laws of either state at the time the transactions took place, or plaintiffs' bill of complaint was filed, but that the state of Delaware subsequent to the commencement of this suit passed a law authorizing voting trust agreements. In this respect, however, we cannot accept the suggestion of counsel for appellants as sound, that, because Delaware has since passed a law expressly authorizing voting trust agreements, as a corollary it should be held that previous to such a law it must be accepted as an established rule of that state that they were theretofore illegal. Legislation must be considered as addressed to the future and not to the past. Union Pacific

R. Co. v. Laramie Stockyards Co., 231 U. S. 190, 34 S. Ct. 101, 58 L. Ed. 179.

[2] Appellants also raise the point that the trust agreement here challenged is violative of the Minnesota statute with relation to a stockholder voting his stock by proxy, because of the time limit placed upon such right. Section 7461 of the Minnesota General Statutes 1923 provides:

"Unless otherwise provided in the certificate or by-laws, at every meeting each stockholder or member, resident or non-resident, shall be entitled to one vote in person, or by proxy made within one year or other times specially limited by law, for each share or other lawful unit of representation held by him in his individual, corporate, or representative capacity."

This objection is clearly met by the by-laws of the defendant corporation in "otherwise providing" as follows:

"At each meeting of the stockholders every stockholder having the right to vote shall be entitled to vote in person, or by proxy appointed by an instrument in writing subscribed by such stockholder and bearing a date not more than three years prior to said meeting, unless said instrument provides for a longer period."

This brings us to the exact point of considering the validity of the voting trust agreement. An examination of the authorities discloses that there has been a gradual modification of the views of both courts and text-writers upon this subject in modern times. The old theory which seemed to dominate the earlier writers, to the effect that every stockholder in a corporation is entitled to have the benefit of the judgment of every other stockholder in the selection of a board of directors, has necessarily been rendered obsolete because of our modern business being conducted by large corporations with thousands of stockholders located in all parts of the country. Manifestly a meeting of the stockholders of such corporate organizations would be not only impracticable but impossible. Upon this subject of change in the policy of the courts in the light of the development of the business of the country, a fair expression will be found in the case of Carnagie Trust Co. v. Ins. Co., 111 Va. 1, 20, 68 S. E. 412, 418, 31 L. R. A. (N. S.) 1186, at page 1195, 21 Ann. Cas. 1287, where the court says:

"It·is impossible to discuss· all the cases cited. Some of them are decided upon considerations as to the nature of irrevocable proxies; others turn upon the statute law of the state in which they are rendered; very

many rest upon the fraudulent or otherwise objectionable character of the object to be obtained; while others, it must be admitted, condemn a trust such as that under consideration as being contrary to public policy, and for that cause null and void. In considering the cases, however, and the text writers who have commented upon them, it is impossible not to be impressed with the change of opinion which has taken place with respect to the true nature of such contracts. In the early stages of the development of this idea, there was a strong sentiment against them, which found expression in the opinions of judges, and in the not always temperate language of distinguished commentators upon the law; but experience has demonstrated their usefulness, and the hostility evinced toward them has by degrees diminished.

"This change of opinion appears nowhere more strikingly than in the very valuable work of Thompson on Corporations. In his first edition he places trust certificates beyond the pale of the law, and declares that they should not be regarded as lawful instruments of commerce, but be treated as 'something in the nature of counterfeit money, as securities which have been issued in violation of law and in contravention of the public right.' (Volume 5, § 6414.) The second edition (which is not yet completed) in § 893, on Voting or Pooling Trusts, uses the following language: 'The fact that the earlier cases were practically unanimous in holding these pooling or voting trusts illegal, and that some law writers and perhaps some courts have broadly stated that all such contracts are void, must, in the light of subsequent cases, and the advancement and development of corporation law, be regarded as an application of a principle to all cases, which was intended to fit but one. Under the recent and advanced decisions, it may be asserted as the present prevailing doctrine that a pooling trust created by a deposit of stock certificates with a trustee for a specified period of time, with the authority to vote the same for the benefit of the owners and to the best interests of the corporation, and without an absolute separation of the voting power from the ownership of the stock, by an agreement which is not a restraint of the alienation of property, nor in restraint of trade, not against public policy, and not a fraud upon other stockholders, is legal.' "

[3] It would unduly lengthen this opinion to quote from authorities, but the following state and federal decisions themselves containing many additional citations, would seem to generally sustain the validity of agreements of this character: Moses v. Scott, 84 Ala. 608, 4 So. 742; Weber v. Mining Co., 14 Idaho, 404, 94 P. 441; Gray v. Bloomington R. Co., 120 Ill. App. 159; Brightman v. Bates, 175 Mass. 105, 55 N. E. 809; Chapman v. Bates, 61 N. J. Eq. 658, 47 A. 638, 88 Am. St. Rep. 459; Manson v. Curtis, 223 N. Y. 313, 119 N. E. 559, Ann. Cas. 1918E, 947; White v. Snell, 35 Utah, 434, 100 P. 927; Thompson-Starrett Co. v. Granite Co., 86 Vt. 282, 84 A. 1017; Clark v. Foster, 98 Wash. 241, 167 P. 908; Ziegler v. Railway Co. (C. C.) 69 F. 176; Borland v. Prindle Co. (C. C.) 144 F. 713; In re C. W. Bartleson Co. (D. C.) 275 F. 390; Boyer v. Nesbit, 227 Pa. 398, 76 A. 103, 136 Am. St. Rep. 890.

While these cases and others are based upon different facts and involve varying situations, they seem altogether to sustain the conclusion that voting trust agreements are not illegal per se. Undoubtedly many of such agreements have at times been held invalid by the courts, but these holdings have generally been based upon a variety of invalidating circumstances, such as want of consideration, the voting power not being coupled with an interest, fraud, or having an illegal or improper purpose. The facts in the case at bar fail to disclose any of these elements. There is no want of consideration or fraud alleged or shown. The voting power in the three trustees is coupled with an interest because one of the trustees is a substantial owner of common stock of the corporation, and all are charged with the duty of protecting and conserving the property for the benefit of those who became purchasers of preferred stock and bonds upon the strength of the trust agreement itself. And the purpose of the agreement was and is legitimate and wholesome. The plan was originally conceived as a matter of civic pride by enterprising citizens of Minneapolis to have an outstanding hostelry commensurate with the generally progressive character of the city. To make this possible, it involved the matter of inviting combinations of capital in substantial amounts. This co-operation could only be secured by having those who invested their money assured of the fact that there would be a continuity of management during a period of years until the new enterprise would have an opportunity to justify a successful financial future. This feature of adequate financing was covered by the trust agreement controlling the voting power of the common stock over a period of years under certain circumstances and conditions, and the securities and stock were sold to the public upon the basis of this representation.

All other things aside, it would be a manifest injustice to the large number of holders of bonds and preferred stocks, not parties to this suit, to adjudge and hold illegal a trust agreement upon the strength of which they had invested their money in the enterprise. A consideration of this phase of the question alone should sustain the trust agreement here. In Clark v. Foster, supra, the court says:

"It may be said, finally, that voting trust agreements are valid and binding, if based upon a sufficient consideration, ·if they do not contravene public policy or a positive prohibitory statute, and if they do not sound in fraud or wrong against the stockholders. Wherefore, the object and not the form of the agreement furnishes the test, and where the trust is voluntarily created as a condition precedent to a loan to protect those who have furnished the money that has put the life into a corporation, the courts should not seek further for a consideration."

[4] Not only for the reasons stated, but it appears that both the plaintiff and intervener here became purchasers of the trust certificates after the creation of the trust agreement and thereby presumably had full knowledge of the limitation of their rights which went with such holdings at the time of purchase. Under these circumstances, their equities would at least appear to be inferior to those innocent purchasers of preferred stock and bonds whose purchases were made because of the agreement.

For the reasons stated, the decree of the trial court should be and is affirmed.

KENYON, Circuit Judge (concurring). I concur in the affirmance of this case solely on the ground that plaintiff and intervener are not in position to question the legality of the voting trust, as they purchased the trust certificates with full knowledge of the trust agreement and therefore of the limitation of their rights.